No. 24-2055

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

JERRY SHARPE-MILLER,
    Plaintiff-Appellant,

v.

WALMART, INC.
    Defendant-Appellee.

On Appeal from the United States District Court
for the District of New Mexico, No. 2:22-cv-00406
Hon. Kea W. Riggs, United States District Judge

**BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION AS AMICUS CURIAE IN SUPPORT OF
APPELLANT AND IN FAVOR OF REVERSAL**

KARLA GILBRIDE
General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

ANNE NOEL OCCHIALINO
Assistant General Counsel

CHELSEA C. SHARON
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2889
chelsea.sharon@eeoc.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.....................................................................................iii

STATEMENT OF INTEREST ...........................................................................1

STATEMENT OF ISSUES ................................................................................1

STATEMENT OF THE CASE............................................................................2

   A.  Statement of the Facts ......................................................................2

   B.  District Court's Decision...................................................................5

ARGUMENT.....................................................................................................8

   I.  The district court erred in its analysis of Sharpe-Miller's
      disparate-treatment claim............................................................8

     A.  A jury could find that Sharpe-Miller's demotion was an adverse
        employment action...................................................................9

     B.  The district court applied too onerous a standard in finding that
        Sharpe-Miller failed to meet the inference-of-discrimination
        prong of the prima facie case as to his demotion and
        termination. .............................................................................12

     C.  Walmart failed to meet its burden to articulate legitimate, non-
        discriminatory reasons for the challenged actions.............................13

   II.  The district court erred in its analysis of Sharpe-Miller's hostile-
       work-environment claim. .......................................................20

     A.  The court erred by disregarding comments it deemed unrelated
        to sexual orientation................................................................21

     B.  The court erred by dismissing conduct that was not directed at
        Sharpe-Miller or not attributable to a specific individual.................23

C.  Sharpe-Miller did not need to show the conduct interfered with his work performance. ............................................................25

D.  A "steady barrage" of opprobrious comments is not required ........26

E.  Discrete discriminatory acts can form part of a hostile-work-environment claim. ................................................................27

CONCLUSION ......................................................................................33

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF DIGITAL SUBMISSION

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Anderson-Bey v. Zavaras,*
  641 F.3d 445 (10th Cir. 2011) ........................................................... 10

*Baird v. Gotbaum,*
  662 F.3d 1246 (D.C. Cir. 2011) ......................................................... 29

*Beckmann v. Ito,*
  430 F. Supp. 3d 655 (D. Haw. 2020) ................................................. 33

*Bell v. AT&T,*
  946 F.2d 1507 (10th Cir. 1991) ......................................................... 16

*Bobelu-Boone v. Wilkie,*
  526 F. Supp. 3d 971 (D.N.M. 2021) .................................................. 30

*Buchanan v. Sherrill,*
  51 F.3d 227 (10th Cir. 1995) ............................................................. 10

*Chambless v. La.-Pac. Corp.,*
  481 F.3d 1345 (11th Cir. 2007) ......................................................... 29

*Chavez v. New Mexico,*
  397 F.3d 826 (10th Cir. 2005) ....................................................... 7, 26

*Cillo v. City of Greenwood Vill.,*
  739 F.3d 451 (10th Cir. 2013) ............................................................. 2

*Considine v. Newspaper Agency Corp.,*
  43 F.3d 1349 (10th Cir. 1994) ........................................................... 16

*Davidson v. Am. Online, Inc.,*
  337 F.3d 1179 (10th Cir. 2003) ......................................................... 32

*Davis v. Unified Sch. Dist. 500,*
  750 F.3d 1168 (10th Cir. 2014) ......................................................... 12

*Davis v. U.S. Postal Serv.*,
  142 F.3d 1334 (10th Cir. 1998) .......................................................25

*Deering v. Hackensack Bd. of Educ.*,
  No. 20-cv-3890, 2021 WL 508608 (D.N.J. Feb. 11, 2021) .............................33

*EEOC v. Horizon/CMS Healthcare Corp.*,
  220 F.3d 1184 (10th Cir. 2000) .................................................12, 13

*EEOC v. Jackson Nat'l Life Ins. Co.*,
  No. 16-cv-02472, 2018 WL 4360442 (D. Colo. Sept. 13, 2018) ..............30, 31

*EEOC v. PVNF, L.L.C.*,
  487 F.3d 790 (10th Cir. 2007) .............................................8, 11, 24

*EEOC v. Target Corp.*,
  460 F.3d 946 (7th Cir. 2006) .................................................16, 20

*EEOC v. W. Bros. Dep't Store of Mansfield, La., Inc.*,
  805 F.2d 1171 (5th Cir. 1986) .......................................................16

*EEOC v. Wyo. Ret. Sys.*,
  771 F.2d 1425 (10th Cir. 1985) .....................................................14

*Ford v. Jackson Nat'l Life Ins. Co.*,
  45 F.4th 1202 (10th Cir. 2022) .....................................................26

*Green v. Brennan*,
  578 U.S. 547 (2016).........................................................28, 29, 32

*Guessous v. Fairview Prop. Invs., LLC*,
  828 F.3d 208 (4th Cir. 2016) ...................................................29, 32

*Hambrick v. Kijakazi*,
  79 F.4th 835 (7th Cir. 2023) .......................................................29

*Harris v. Forklift Sys., Inc.*,
  510 U.S. 17 (1993).................................................................25

*Hernandez v. Valley View Hosp. Ass'n*,
  684 F.3d 950 (10th Cir. 2012) .................................................22, 24

*Hooks v. Diamond Crystal Specialty Foods, Inc.*,
997 F.2d 793 (10th Cir. 1993) ..........................................................10

*Increase Minority Participation by Affirmative Change Today of Nw.
Fla., Inc. v. Firestone*,
893 F.2d 1189 (11th Cir. 1990) ........................................................17

*Johnson v. Handley*,
604 F. Supp. 3d 1306 (D. Wyo. 2022) ................................29, 30, 31

*King v. Aramark Servs. Inc.*,
96 F.4th 546 (2d Cir. 2024) ......................................................29, 31

*Lee v. Russell Cnty. Bd. of Educ.*,
684 F.2d 769 (11th Cir. 1982) ..........................................................18

*Lounds v. Lincare, Inc.*,
812 F.3d 1208 (10th Cir. 2015) ................................................22, 27

*Martinez v. Potter*,
347 F.3d 1208 (10th Cir. 2003) ........................................................32

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ..................................................................1, 8

*Milczak v. Gen. Motors, LLC*,
102 F.4th 772 (6th Cir. 2024) ..........................................................11

*Muldrow v. City of St. Louis*,
144 S. Ct. 967 (2024) ......................................................5, 9, 10, 11

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002) ..................................................................28, 31

*Nulf v. Int'l Paper Co.*,
656 F.2d 553 (10th Cir. 1981) ..........................................................18

*O'Connor v. City of Newark*,
440 F.3d 125 (3d Cir. 2006) ..............................................................31

*Ogbonna-McGruder v. Austin Peay State Univ.,*
No. 23-1238, 2024 WL 3089575 (U.S. June 24, 2024) (mem.) ....................29

*Ogbonna-McGruder v. Austin Peay State Univ.,*
91 F.4th 833 (6th Cir. 2024) ...............................................................29

*Orr v. City of Albuquerque,*
417 F.3d 1144 (10th Cir. 2005) .........................................................13

*Penry v. Fed. Home Loan Bank of Topeka,*
155 F.3d 1257 (10th Cir. 1998) .........................................................22

*Porter v. Cal. Dep't of Corrs.,*
419 F.3d 885 (9th Cir. 2005) ............................................................31

*Porter v. Regents of Univ. of Colo.,*
No. 22-cv-00335, 2023 WL 2664207 (D. Colo. Mar. 28, 2023) ....................30

*Smith v. Nw. Fin. Acceptance, Inc.,*
129 F.3d 1408 (10th Cir. 1997) ...........................................25, 26, 27

*St. Mary's Honor Ctr. v. Hicks,*
509 U.S. 502 (1993) .........................................................................20

*Tademy v. Union Pac. Corp.,*
614 F.3d 1132 (10th Cir. 2008) ..................................................24, 26

*Tex. Dep't of Cmty. Affs. v. Burdine,*
450 U.S. 248 (1981) .......................................................8, 14, 15, 20

*Uviedo v. Steves Sash & Door Co.,*
753 F.2d 369 (5th Cir. 1985) ............................................................17

*Uviedo v. Steves Sash & Door Co.,*
738 F.2d 1425 (5th Cir. 1984) ..........................................................17

**Statutes and Rules**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*...................................................................................................1

42 U.S.C. § 2000e-2(a)(1)................................................................10

Fed. R. App. P. 29(a)(2)......................................................................1

Fed. R. Evid. 801(c)..........................................................................15

**Other Authorities**

EEOC Enforcement Guidance on Harassment in the Workplace,
No. 915.064 (Apr. 29, 2024),
https://www.eeoc.gov/laws/guidance/enforcement-
guidance-harassment-workplace ........................................23, 24, 25, 27, 30

*Fairy*, Merriam-Webster.com, https://www.merriam-
webster.com/dictionary/fairy (last visited Aug. 8, 2024)........................22

# STATEMENT OF INTEREST

Congress charged the Equal Employment Opportunity Commission (EEOC) with administering and enforcing federal laws prohibiting workplace discrimination, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*

The district court committed several legal errors with respect to Plaintiff's Title VII sex-discrimination claims, including misapplying the burden-shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), in analyzing his disparate-treatment claim and applying incorrect legal standards to his hostile-work-environment claim. Because EEOC has a strong interest in the proper application of the laws it enforces, EEOC offers its views. *See* Fed. R. App. P. 29(a)(2).

# STATEMENT OF ISSUES

1.  Did the district court err in its legal analysis of Plaintiff's disparate-treatment claim by holding that his demotion was not an adverse employment action; requiring him to rebut Walmart's purported reasons for his demotion and termination at the prima facie stage; and concluding that Walmart met its burden to articulate legitimate, non-discriminatory reasons for the challenged actions?

2.  Did the district court err in its legal analysis of Plaintiff's hostile-work-environment claim by disregarding comments it deemed unrelated to Plaintiff's sexual orientation, unattributable to a specific individual, or not directed at Plaintiff; requiring him to show interference with his work performance and a "steady barrage" of offensive comments; and refusing to consider discrete discriminatory acts as part of the claim?

## STATEMENT OF THE CASE

### A.   Statement of the Facts[1]

Jerry Sharpe-Miller, a gay man, filed this suit alleging that Walmart demoted him, terminated him, and subjected him to a hostile work environment because of his sexual orientation. App.Vol.I at 110-26.[2]

Sharpe-Miller began working for Walmart in 2017 in a stocker/unloader position. App.Vol.II at 371 (27:2-5). He contends that, over the roughly four years he worked there, he was routinely subjected to offensive comments about his sexual orientation. On one occasion, a

---

[1] EEOC presents these facts in the light most favorable to Sharpe-Miller, consistent with the standard of review for an award of summary judgment. *See Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013).

[2] Citations to Sharpe-Miller's appendices take the form "App.Vol.X at X." Parentheticals refer to the internal pagination for deposition testimony given by the reporting company.

manager asked Sharpe-Miller if a man shopping at the store with him was his partner. App.Vol.II at 393 (116:5-117:11). When Sharpe-Miller responded in the negative, the manager stated: "That was good—if homosexuals got any more rights, [then] we might as well legalize pedophilia and bestiality."App.Vol.II at 415 (203:5-13). Sharpe-Miller also testified that an associate called him "Jerry, the fairy"; that he frequently overheard the word "faggot" in the break room; that two other associates regularly used the terms "faggot" and "butt pirate"; and that he saw a drawing on a blackboard of a person with the word "faggot" in capital letters across the forehead. App.Vol.II at 397 (134:13-22), 405 (165:3-166:7), 415 (204:5-22), 420 (223:19-25). In addition, two managers made comments to Sharpe-Miller about him having a "cat walk," an associate asked if he was "afraid to break a nail" while disassembling a merchandise pallet, and other associates made wrist-flicking gestures at him. App.Vol.II at 396 (128:6-16), 398 (136:1-22, 138:7-17), 403 (157:10-16).

In June 2019, Walmart promoted Sharpe-Miller to a "Cap 2" supervisor position but later that year demoted him, resulting in a pay decrease from $15 to $13.50 per hour. App.Vol.II at 378 (58:23-25), 388 (95:4-13). His managers told him he could either accept the demotion or be

terminated. App.Vol.II at 386 (87:20-22). Sharpe-Miller later testified that he was uncertain of the reasons for the demotion but that his supervisors told him, "the market manager . . . saw something that I did or something, and he didn't really like it." App.Vol.II at 386 (88:15-16). Sharpe-Miller testified as to an incident involving clean-up of a spill, but he said he was "not too sure" if this was the reason for the demotion. App.Vol.II at 387 (92:2-20).

In April 2021, Sharpe-Miller missed one day of work for jury duty. App.Vol.II at 389 (102:10-15). He believed Walmart knew he would be missing work for that reason. App.Vol.II at 389 (102:10-22). However, when he returned to work, his supervisor told him Walmart "terminated me, and that I couldn't be there." App.Vol.II at 389 (102:16-20). Sharpe-Miller explained he had been on jury duty and asked to speak with someone higher up. App.Vol.II at 389 (106:20-25). Walmart reinstated him shortly afterwards, but he resigned a few weeks later. App.Vol.II at 388 (98:17-22), 390 (104:5-11). He testified that "being fired was kind of like the last straw for me" because "I put four years in the company and . . . I just got fired out of the blue, and it . . . hit me very, very, very hard." App.Vol.II at 389 (101:1-2, 15-18).

## B. District Court's Decision

The district court granted summary judgment to Walmart on Sharpe-Miller's disparate-treatment and hostile-work-environment claims.[3]

In analyzing the prima facie elements of the disparate-treatment claim, the court first concluded that Sharpe-Miller's demotion did not qualify as an adverse employment action, defining the relevant standard as requiring "significant change[s] in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[4] App.Vol.II at 306 (alteration in original) (citation omitted). Sharpe-Miller's demotion did not meet this standard, the court said, because it was not "motivated by Plaintiff's sexual orientation," was not "unendurable or humiliating," and had no "nexus" to "engagement in a protected activity."

---

[3] Sharpe-Miller also alleged constructive discharge based on his sexual orientation and brought retaliation and other claims. *See* App.Vol.II at 298-305, 308-10, 318-20. EEOC takes no position on those claims or any other issue in this appeal.

[4] The district court's summary-judgment decision (and its decision on Sharpe-Miller's subsequent motion to alter or amend the judgment) predated the Supreme Court's decision in *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024), addressing Title VII's standard for actionable discrimination.

App.Vol.II at 307. The court did not discuss whether Sharpe-Miller's termination following his jury-duty absence qualified as an adverse employment action.

The court next found that Sharpe-Miller failed to raise an inference of discrimination, stating, without citation to record evidence, that Walmart "demoted Plaintiff because of his failure to follow company protocols" and "terminated [him] because of his habitual tardiness and absences." App.Vol.II at 310. The court reasoned that these same explanations established "legitimate nondiscriminatory reasons" for Walmart's actions at the second step of the *McDonnell Douglas* inquiry. App.Vol.II at 311.

The court also deemed the relevant conduct insufficient to establish a hostile work environment. First, the court concluded that only "three of the incidents, the use of the words 'faggot' and 'butt pirate,' associates flicking their wrists at Plaintiff, and the comment referring to pedophilia and bestiality, have homophobic connotations" and dismissed the remainder of the comments as "[un]related to [Sharpe-Miller's] sexual orientation" and thus "insufficient to impose liability." App.Vol.II at 314. Second, the court appeared to disregard those incidents that were not "directed at" Sharpe-Miller or where he was "unable to identify the declarant." App.Vol.II at

314, 316. Third, the court suggested that because the incidents did not "interfere[] with Plaintiff's work performance" they did not amount to a hostile work environment. App.Vol.II at 315. Fourth, the court concluded that the incidents did not "form[] a 'steady barrage' [of opprobrious comments] required for a hostile work environment claim." App.Vol.II at 315 (quoting *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005)). Finally, the court concluded that discrete discriminatory acts like Sharpe-Miller's demotion and termination could not form part of the hostile-work-environment claim. App.Vol.II at 317.

Sharpe-Miller filed a motion to alter or amend the judgment, arguing that summary judgment was inappropriate as to his disparate-treatment claim because Walmart produced no evidence that his demotion or termination occurred for legitimate, non-discriminatory reasons. App.Vol.II at 323-38. The district court rejected Sharpe-Miller's argument that "the true causes" of his demotion and termination "were not definitively determined," characterizing this argument as mere "speculation and conjecture" insufficient to withstand summary judgment. App.Vol.II at 489, 493-94, 497.

## ARGUMENT

## I. The district court erred in its analysis of Sharpe-Miller's disparate-treatment claim.

Under the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the plaintiff carries the initial burden of establishing a prima facie case of discrimination. *Id.* at 802. A prima facie case generally requires a plaintiff to show, by a preponderance of the evidence, that he is a member of a protected class, he suffered an adverse employment action, and the challenged action occurred under circumstances giving rise to an inference of discrimination. *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged action. *McDonnell Douglas Corp.*, 411 U.S. at 802. If the employer meets this burden of production, then the plaintiff bears the ultimate burden of persuading the trier of fact that the employer's stated reasons were pretextual. *Id.* at 804-05. If, however, the employer fails to meet its burden of production, the plaintiff is entitled to judgment in his favor. *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981).

Here, the district court made three legal errors in applying the *McDonnell Douglas* framework. First, the court incorrectly concluded that Sharpe-Miller's demotion could not qualify as an adverse employment action for purposes of his prima facie case. Second, the court applied too onerous a standard in determining that Sharpe-Miller could not meet the inference-of-discrimination prong of the prima facie case. Finally, at the second *McDonnell Douglas* step, the court incorrectly found that Walmart met its burden to articulate legitimate, non-discriminatory reasons for Sharpe-Miller's demotion and termination.

## A. A jury could find that Sharpe-Miller's demotion was an adverse employment action.

The district court concluded that Sharpe-Miller's demotion was not an adverse employment action, defining the standard as requiring "significant change[s] in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." App.Vol.II at 306 (alteration in original) (citation omitted). Subsequently, however, in *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024), the Supreme Court rejected any such significant change requirement. *Id.* at 974. It held that a

Title VII plaintiff need only "show some harm respecting an identifiable term or condition of employment" and not "that the harm incurred was 'significant'" or "serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.*; *see id.* at 975 n.2 (stating that the Court's decision "changes the legal standard used in any circuit that has previously required 'significant,' 'material,' or 'serious' injury," and "lowers the bar Title VII plaintiffs must meet").

    *Muldrow* applies here even though the district court's decisions predated it.[5] *See Anderson-Bey v. Zavaras*, 641 F.3d 445, 454 (10th Cir. 2011) (Supreme Court interpretation of federal law "must be given full retroactive effect in all cases still open on direct review") (citation omitted). A jury could readily find that Sharpe-Miller's demotion satisfies the *Muldrow* standard because the demotion resulted in "harm respecting an identifiable term or condition of employment," *Muldrow*, 144 S. Ct. at 974,

---

[5] Even under the pre-*Muldrow* standard, the district court erred because a demotion resulting in loss of pay is actionable under that prior standard. *E.g.*, *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 799 (10th Cir. 1993), *overruled in part on other grounds by Buchanan v. Sherrill*, 51 F.3d 227 (10th Cir. 1995); *see also* 42 U.S.C. § 2000e-2(a)(1) (discrimination as to "compensation" prohibited).

namely, a pay cut from \$15 to \$13.50 per hour. App.Vol.II at 388 (95:4-13);
*see Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 787 (6th Cir. 2024) (applying
*Muldrow* when considering pre-*Muldrow* decision and concluding that loss
of opportunity to make overtime pay, among other actions, "created at
least 'some harm'" and "left [plaintiff] 'worse off'") (quoting *Muldrow*, 144
S. Ct. at 974).

The district court's contrary conclusion also rested on irrelevant
considerations. First, the court said the demotion could not be adverse
because it was not "motivated by Plaintiff's sexual orientation." App.Vol.II
at 307. But the employer's motivations are relevant not to adversity but
instead to whether Sharpe-Miller raised an inference of discrimination,
which the court later separately considered. App.Vol.II at 310. Second, the
court focused on whether the "demotion was unendurable or humiliating
so as to compel resignation." App.Vol.II at 307. But this inquiry relates to
*constructive discharge*, which the court separately considered, App.Vol.II at
308-10, not to whether the demotion was itself actionable under a
disparate-treatment theory. *See PVNF*, 487 F.3d at 805-06 (constructive-
discharge standard is more onerous than adverse-action standard for
disparate-treatment claims). Third, the court said that Sharpe-Miller had

"not established that he engaged in a protected activity when demoted and

is, therefore, lacking causality and temporal proximity," App.Vol.II at 307,

but this analysis pertains to a retaliation rather than discrimination claim.

*See Davis v. Unified Sch. Dist. 500*, 750 F.3d 1168, 1170 (10th Cir. 2014)

(listing prima facie elements of Title VII retaliation claim).

**B.    The district court applied too onerous a standard in finding
        that Sharpe-Miller failed to meet the inference-of-
        discrimination prong of the prima facie case as to his demotion
        and termination.**

In finding the inference-of-discrimination prong unmet, the district

court stated that Walmart "demoted Plaintiff because of his failure to

follow company protocols" and "terminated [him] because of his habitual

tardiness and absences." App.Vol.II at 310. As noted below, Walmart failed

to adduce evidence that these were the reasons for the demotion and

termination. *Infra* pp. 13-20. But even putting aside this lack of evidence,

the court's reliance on Walmart's purported non-discriminatory reasons at

the prima facie stage was error. "At the prima facie stage of the *McDonnell*

*Douglas* analysis, a plaintiff is only required to raise an inference of

discrimination, not dispel the non-discriminatory reasons subsequently

proffered by the defendant." *EEOC v. Horizon/CMS Healthcare Corp.*, 220

F.3d 1184, 1193 (10th Cir. 2000); *see also Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) ("In analyzing Plaintiffs' prima facie case, it is important not to conflate their claim of discrimination with Defendants' proffered explanation.").

By treating Walmart's alleged reasons as dispositive, the court "[s]hort-circuit[ed] the analysis at the prima facie stage," *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1193 (citation omitted), and placed "an elevated burden" on Sharpe-Miller. *Orr*, 417 F.3d at 1152; *see id.* (emphasizing that "the prima facie stage in the *McDonnell Douglas* test is not onerous").

## C. Walmart failed to meet its burden to articulate legitimate, non-discriminatory reasons for the challenged actions.

Without citing record evidence, the court found that Walmart "demoted Plaintiff because of his failure to comply with company protocols regarding spilled products" and terminated him because "[w]hen [he] failed to report to work due to jury duty, he had reached Walmart's point threshold for termination." App.Vol.II at 311. Walmart, however, adduced no evidence suggesting these were the reasons for the demotion or termination.

While an employer's second-step burden is light, the employer still "must clearly set forth, *through the introduction of admissible evidence*, the reasons for" the challenged employment decision. *Burdine*, 450 U.S. at 255 (emphasis added); *id.* at 255 n.9 ("An articulation not admitted into evidence will not suffice. . . . [T]he defendant cannot meet its burden merely . . . by argument of counsel."); *EEOC v. Wyo. Ret. Sys.*, 771 F.2d 1425, 1429 (10th Cir. 1985) (agreeing that defendants failed to meet second-step burden as to all but one claimant because they did not "produce admissible evidence which clearly articulated legitimate, nondiscriminatory reasons for" the challenged actions) (citation omitted).

Here, Walmart introduced no admissible evidence as to the reasons for Sharpe-Miller's demotion or termination. It did not proffer any contemporaneous documentation of its reasons or any testimony from the decision-makers. Instead, as to the demotion, Walmart pointed to Sharpe-Miller's deposition testimony as proof that the demotion stemmed from failure to comply with company policies regarding spilled products. App.Vol.I at 199-200, 214. But Sharpe-Miller's testimony merely provides speculation, based on hearsay, that this *might* have been the reason for the demotion. When asked what reason his supervisors gave him for the

demotion, he testified that they told him "that [his] work wasn't satisfactory" but "they didn't really go . . . too into detail. They said that, I guess, when the market manager . . . came down, he saw something that I did or something, and he didn't really like it." App.Vol.II at 386 (87:20, 88:13-16). When asked what the market manager did not like, Sharpe-Miller explained he did not ask his supervisors for further detail because he "didn't really want to press the issue." App.Vol.II at 386 (89:8). While Sharpe-Miller did recount an issue involving his clean-up of a spilled product, he remained uncertain if this motivated the demotion, stating "I think it might have been [that] issue" the market manager did not like "but I'm really not too sure." App.Vol.II at 387 (92:2-20).

As an initial matter, Sharpe-Miller's testimony that (1) his supervisors told him that (2) the market manager told them that the manager "saw something that [Sharpe-Miller] did" that the manager "didn't really like" appears to be double hearsay. App.Vol.II at 386 (88:14-16); *see* Fed. R. Evid. 801(c). And, even if admissible, any vague allusions by the market manager to something he "didn't really like" lack the specificity required to sustain an employer's second-step burden. *See Burdine*, 450 U.S. at 258 ("the defendant's explanation of its legitimate reasons must be clear and

reasonably specific" so that "the plaintiff [can] be afforded 'a full and fair opportunity' to demonstrate pretext"); *EEOC v. Target Corp.*, 460 F.3d 946, 958 (7th Cir. 2006) (explanation that applicant "did not meet the requirements" for the position, without further detail, was insufficient to "frame the dispute").

In any event, given Sharpe-Miller's uncertainty as to the reasons for the demotion, it was improper for the court to rely on his speculation as to what might have motivated Walmart. *See EEOC v. W. Bros. Dep't Store of Mansfield, La., Inc.*, 805 F.2d 1171, 1172 (5th Cir. 1986) ("We are concerned with what an employer's actual motive was; hypothetical or *post hoc* theories really have no place in a Title VII suit."). It is not appropriate for a court to "surmise[]" from the record what "was the real reason" for the challenged action based on "a justification never proffered by the employer." *Bell v. AT&T*, 946 F.2d 1507, 1513 (10th Cir. 1991); *see also Considine v. Newspaper Agency Corp.*, 43 F.3d 1349, 1365 (10th Cir. 1994) (explaining that "the trial court cannot rely exclusively on the testimony of a plaintiff's witness to surmise a justification for the employer's action that the employer never articulated") (citing *Bell*, 946 F.2d at 1513).

"It is beyond the province of a trial or a reviewing court to determine—after the fact—that certain facts in the record might have served as the basis for an employer's personnel decision." *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1430 (5th Cir. 1984), *modified on other grounds on reh'g*, 753 F.2d 369 (5th Cir. 1985); *see also Increase Minority Participation by Affirmative Change Today of Nw. Fla., Inc. v. Firestone*, 893 F.2d 1189, 1194 (11th Cir. 1990) (employer failed to meet second-step burden where it "offered no evidence explaining any employment decision" but instead introduced "personnel records which *may* have indicated that the employer based its decision on one or more . . . possible valid grounds"). Here, Walmart's witnesses disclaimed any knowledge of the reasons for the demotion, App.Vol.II at 344 (21:6-11), 450 (58:12-14), and in fact the store's HR Lead testified that he was unaware of any concerns with Sharpe-Miller's performance. App.Vol.II at 440 (18:9-19:21). Because Walmart introduced no evidence about the reasons for Sharpe-Miller's demotion and instead simply asked the district court to surmise potential reasons from his deposition testimony, Walmart failed to meet its second-step

burden of production.[6] *Lee v. Russell Cnty. Bd. of Educ.*, 684 F.2d 769, 775 (11th Cir. 1982) (rejecting the non-discriminatory reasons "assigned by the court" because they were not reasons articulated by decision-makers when they testified).

Turning to the termination, Walmart similarly failed to introduce any evidence to show that the purported five-point attendance threshold was the reason for Sharpe-Miller's termination. Walmart's summary-judgment briefing relied on the testimony of supervisor Cassandra Melendez, App.Vol.I at 213, but she testified that she had no involvement in the decision to terminate Sharpe-Miller and did not personally remove him from the payroll. App.Vol.II at 428 (14:17-18, 17:10-12), 432 (30:1-9). Walmart cited her testimony for the proposition that an associate who "accumulates five points . . . is subject to disciplinary action, including termination" and that "Plaintiff had already acquired five points or absence

---

[6] To be sure, an employer may be able to rely on a plaintiff's deposition testimony to carry its second-step burden where, for example, the plaintiff unambiguously supplies legitimate, non-discriminatory reasons for the challenged action. *Cf. Nulf v. Int'l Paper Co.*, 656 F.2d 553, 559 (10th Cir. 1981) (plaintiff testified unambiguously that she engaged in insubordination). But Sharpe-Miller offered no such unambiguous testimony.

occurrences when he was removed from the payroll system on April 6, 2021." App.Vol.I at 213. This mischaracterizes her testimony. While she did testify that another manager told her Sharpe-Miller had accrued five points, App.Vol.II at 428 (15:15-20), she never testified to the existence of any five-point threshold.

Moreover, Walmart did not cite Melendez's deposition for the proposition that this purported threshold was in fact the reason for Sharpe-Miller's termination. App.Vol.I at 213. And for good reason, given that Melendez offered only hearsay testimony that another manager, Charles Stark, had told her that Sharpe-Miller should be removed because he accrued five points. App.Vol.II at 428 (15:15-20). Melendez then appeared to contradict that hearsay testimony by stating that she could not remember if she had any such conversation with Stark and that Stark had never directed her to remove Sharpe-Miller from the payroll. App.Vol.II at 428 (16:22-25, 17:13-16). Moreover, Stark himself could not even recall whether he terminated Sharpe-Miller.[7] App.Vol.II at 346-47 (29:16-22, 30:9-

---

[7] As to the reasons for the termination, Stark offered only speculative testimony that he "believe[d] it was attendance" and "want[ed] to say [Sharpe-Miller] was terminated for attendance." App.Vol.II at 346-47 (29:12, 30:1-2).

11). And no other Walmart witness with personal knowledge ever testified to the reasons for the termination. *See* App.Vol.II at 445-46 (41:24-42:3) (HR Lead disclaiming personal knowledge of reasons for termination). Walmart thus failed to sustain its second-step burden as to Sharpe-Miller's termination as well.

"[I]f the employer is silent in the face of [the plaintiff's prima facie case], the court must enter judgment for the plaintiff . . . ." *Burdine*, 450 U.S. at 254; *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) (plaintiff entitled to judgment as a matter of law if employer "fail[s] to meet its burden of production"). Thus, if this Court finds a triable issue of fact as to the elements of Sharpe-Miller's prima facie case, he can survive summary judgment without showing that Walmart's purported reasons for the demotion and termination are pretextual. *Target*, 460 F.3d at 958 ("Because Target's [purported legitimate] reason is insufficient, the EEOC can survive summary judgment without refuting Target's proffered reason.").

## II.   The district court erred in its analysis of Sharpe-Miller's hostile-work-environment claim.

In concluding that Sharpe-Miller could not survive summary judgment as to his hostile-work-environment claim, the district court

committed several legal errors. The court improperly: (1) dismissed conduct it deemed unrelated to Sharpe-Miller's sexual orientation; (2) disregarded conduct that was not directed at Sharpe-Miller or attributable to a specific individual; (3) demanded Sharpe-Miller show that the conduct interfered with his work performance; (4) required a "steady barrage" of offensive comments; and (5) refused to consider discrete discriminatory acts as part of the claim.

### A. The court erred by disregarding comments it deemed unrelated to sexual orientation.

The court concluded that only three incidents—"the use of the words 'faggot' and 'butt pirate,' associates flicking their wrists at Plaintiff, and the comment referring to pedophilia and bestiality"—had "homophobic connotations." App.Vol.II at 314. The court then dismissed the remainder of the incidents as "[un]related to [Sharpe-Miller's] sexual orientation and . . . therefore, insufficient to impose liability." App.Vol.II at 314. But a jury could question whether the remaining incidents—Sharpe-Miller being called "Jerry, the fairy" and being told he "walks like a cat" and "might break a nail"—were in fact devoid of "homophobic connotations." App.Vol.II at 313-14. The term "fairy" is commonly recognized as "a term

of abuse and disparagement" towards a "gay person," *see Fairy*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/fairy (last visited Aug. 8, 2024), and Sharpe-Miller testified that he viewed the "break a nail" and "cat walk" comments as a "derogatory jab" and a "discriminatory attack on [his] masculinity" because of the feminine connotations of the comments. App.Vol.II at 397 (134:2-5), 399 (139:4-7). And the district court did not discuss at all the drawing of an individual with the word "faggot" across their forehead. App.Vol.II at 420 (223:19-25).

In any event, this Court's precedents "eschew . . . [the] mechanical approach" the district court adopted here, whereby it "determin[ed] that certain . . . conduct was [based on sexual orientation] (and therefore relevant to [Sharpe-Miller's] claims), while determining that the other conduct was not [based on sexual orientation] (and was therefore irrelevant to [his] claims)." *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1262 (10th Cir. 1998). Instead, this Court's case law "unmistakably requires [courts] to assess . . . comments and behavior that in many circumstances might appear to be facially neutral." *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1224 (10th Cir. 2015) (section 1981 case); *see Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 960 (10th Cir. 2012) (purportedly facially neutral

conduct could not "simply be discarded") (citation omitted). EEOC's Enforcement Guidance similarly cautions that "[f]acially neutral conduct . . . should not be separated from facially discriminatory conduct and then discounted as non-discriminatory." EEOC Enforcement Guidance on Harassment in the Workplace, No. 915.064, § II.B.5 (Apr. 29, 2024), https://www.eeoc.gov/laws/guidance/enforcement-guidance-harassment-workplace ("EEOC Harassment Guidance"). The court thus erred by disregarding comments it deemed unrelated to sexual orientation in analyzing the hostile-work-environment claim.

### B. The court erred by dismissing conduct that was not directed at Sharpe-Miller or not attributable to a specific individual.

The court emphasized that, for "several" incidents, Sharpe-Miller could neither show that the comments were "directed at him" nor "identify the declarant." App.Vol.II at 314, 316. The court then appeared to dismiss those incidents as "insufficient to impose liability." App.Vol.II at 314. To begin, for several incidents in question—namely, the "pedophilia and bestiality" comment, the "break a nail" and "cat walk" comments, and the wrist-flicking gestures—Sharpe-Miller *did* both identify the declarant and testify that the conduct was directed at him. App.Vol.II at 396 (128:6-12),

398 (136:1-10, 138:7-14), 403 (156:15-157:16), 415 (203:5-13). Other incidents were targeted at Sharpe-Miller, although he could not identify the declarant (like the "Jerry, the fairy" comment), or were attributable to specific individuals although not directed at Sharpe-Miller (like the "faggot" and "butt pirate" comments). App.Vol.II at 397 (134:13-22), 415 (204:13-22).

In any event, discriminatory conduct need not be attributable to a specific individual or directed at the plaintiff to support a hostile-work-environment claim. *See PVNF*, 487 F.3d at 798 ("We have never held, nor would we, that to be subjected to a hostile work environment the discriminatory conduct must be both directed at the victim and intended to be received by the victim."); *Hernandez*, 684 F.3d at 959 (similar); *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1145-46, 1149 (10th Cir. 2008) (considering anonymous graffiti when analyzing severity of harassment); EEOC Harassment Guidance § III.C.2.a (harassing conduct can be actionable "even if it is not directed at" the plaintiff or is "anonymous" in nature). The court thus erred by dismissing conduct not directed at Sharpe-Miller or not attributable to a specific individual when analyzing his claim.

## C. Sharpe-Miller did not need to show the conduct interfered with his work performance.

The court suggested that the relevant incidents could not amount to a hostile work environment because they did not "interfere[] with [Sharpe-Miller's] work performance." App.Vol.II at 315. As an initial matter, the court's basis for concluding that the incidents did not interfere with Sharpe-Miller's work performance is unclear. To the extent this conclusion relied on the fact that Sharpe-Miller "continued his employment with [Walmart] until 2021" "despite these offens[iv]e comments," App.Vol.II at 316, the law "does not require that [a plaintiff] quit or want to quit the employment in question" to establish a hostile-work-environment claim. *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998). Nor need a plaintiff show that his "tangible productivity or work performance declined." *Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408, 1413 (10th Cir. 1997); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring) (relevant inquiry is whether harassment "ma[d]e it more difficult to do the job," not whether "tangible productivity has declined") (citations omitted); EEOC Harassment Guidance at III.B.3.a ("A complainant need not show that discriminatory conduct harmed the

complainant's work performance . . . ."). Indeed, "a victim's ability to succeed at [their] job in the face of harassment should not then mean that [they] ha[ve] forfeited [their] right to bring a claim for hostile work environment." *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1231 (10th Cir. 2022).

### D.   A "steady barrage" of opprobrious comments is not required.

The court found that Sharpe-Miller did not show "a 'steady barrage' [of opprobrious comments] required for a hostile work environment claim." App.Vol.II at 315 (quoting *Chavez*, 397 F.3d at 832). While some decisions of this Court have used this "steady barrage" phrase, others have emphasized that this language merely conveys the unremarkable proposition that "isolated incidents of harassment . . . do not constitute pervasive conduct." *Smith*, 129 F.3d at 1414; *see also Chavez*, 397 F.3d at 832 (using "steady barrage" language in context of finding that two offensive comments were insufficient to establish actionable hostile work environment).

Far from requiring a "talismanic number of incidents" to show pervasiveness, *Tademy*, 614 F.3d at 1143, this Court has adopted a "qualitative" approach that recognizes that "the word 'pervasive' is not

[simply] a counting measure," *Lounds*, 812 F.3d at 1223 (alteration in original) (citation omitted); *see also* EEOC Harassment Guidance, § III.B.3.a (no "'magic number' of harassing incidents" required). Here, the district court's apparent focus on numerical insufficiency contravened this qualitative approach.

Moreover, even if the court had been right that the lack of a "steady barrage" of incidents defeated pervasiveness, the conduct could still be actionable if sufficiently severe. *See Smith*, 129 F.3d at 1414-15 (rejecting employer's "steady barrage" argument as to pervasiveness but stating that "the test is disjunctive and we affirm on the ground of severity"). By treating the purported absence of pervasiveness as dispositive without separately considering the severity prong, the court further erred.

### E. Discrete discriminatory acts can form part of a hostile-work-environment claim.

The court concluded that "discrete [discriminatory] acts" like Sharpe-Miller's demotion and termination "cannot form part of a hostile work environment claim." App.Vol.II at 317. While this Court has not directly addressed this issue, Supreme Court precedent and case law from several

other circuits support the conclusion that discrete discriminatory acts can form part of a hostile-work-environment claim.

First, the Supreme Court's decisions in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), and *Green v. Brennan*, 578 U.S. 547 (2016), suggest that discrete acts can comprise part of a hostile-work-environment claim. *Morgan*, in considering the application of the continuing-violation doctrine, distinguished between discrete acts that underlie disparate-treatment claims and continuing conduct that underlies hostile-work-environment claims. The Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." 536 U.S. at 113. But the Court emphasized that "[h]ostile environment claims are different in kind from discrete acts," as they are "composed of a series of separate acts that collectively constitute one 'unlawful employment practice,'" and could thus rest on "component acts . . . [that] fall outside the statutory time period," provided that at least one "act contributing to the claim occurs within the filing period." *Id.* at 115, 117 (citation omitted).

While *Morgan* did not address whether these "component acts" could include discrete discriminatory acts, *Green* suggested an affirmative answer

to this question. It characterized *Morgan* as holding that a hostile-work-environment claim "includes every act composing that claim, *whether those acts are independently actionable or not*." 578 U.S. at 557 (emphasis added). Indeed, several circuits have held that discrete acts can comprise part of a hostile-work-environment claim if sufficiently related to the course of conduct underlying that claim.[8] *King v. Aramark Servs. Inc.*, 96 F.4th 546, 560-61 (2d Cir. 2024); *Hambrick v. Kijakazi*, 79 F.4th 835, 842 (7th Cir. 2023); *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 222-23 (4th Cir. 2016); *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011); *Chambless v. La.-Pac. Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007). *But see Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 840 (6th Cir. 2024) (reaching contrary conclusion in post-*Green* case), *cert. denied*, No. 23-1238, 2024 WL 3089575 (U.S. June 24, 2024) (mem.).

Several district courts in this Circuit have similarly held that discrete acts can support a hostile-work-environment claim. *E.g., Johnson v. Handley,*

_____

[8] Most of these decisions have addressed the issue in the context of determining whether a non-time-barred discrete act could "rescue" an otherwise-time-barred hostile-work-environment claim or whether a time-barred discrete act could form part of a non-time-barred hostile-work-environment claim. Here, the district court did not suggest that either the discrete or non-discrete acts in question were time barred.

604 F. Supp. 3d 1306, 1311 (D. Wyo. 2022) (section 1981 case) ("[A] single discriminatory act that could be independently actionable . . . can be part of a series of actions that together creates a hostile work environment."); *Porter v. Regents of Univ. of Colo.*, No. 22-cv-00335, 2023 WL 2664207, at *7 (D. Colo. Mar. 28, 2023) ("Courts in this District have found that discrete acts of employment discrimination *can* form part of the basis of a hostile work environment claim."); *EEOC v. Jackson Nat'l Life Ins. Co.*, No. 16-cv-02472, 2018 WL 4360442, at *6-7 (D. Colo. Sept. 13, 2018) (surveying case law and concluding that "stand-alone acts of discrimination" can "be considered as part of a hostile work environment claim"). *But see Bobelu-Boone v. Wilkie*, 526 F. Supp. 3d 971, 982 (D.N.M. 2021) (concluding in post-*Green* case that "discrete acts . . . cannot form part of a hostile work environment claim"). EEOC's Enforcement Guidance is in accord with the majority of courts. EEOC Harassment Guidance, § III.C.1 ("A hostile work environment claim may include . . . conduct that may be independently actionable . . . as long as it is part of an overall pattern of harassing conduct.").

This approach is "consistent with how hostile environment claims work. . . . [A] hostile environment is formed and shaped by an assemblage

of discriminatory acts—*including* acts that might *also* support a discrete-act discrimination claim if timely filed." *King*, 96 F.4th at 561. There is nothing "qualitatively different" about discrete acts that prevent them from forming part of this assemblage. *Jackson Nat'l Life Ins. Co.*, 2018 WL 4360442, at *6-7 (disagreeing with case law finding such a difference). "Surely a victim of a hostile work environment feels equally harassed regardless of whether each separate incident . . . does or does not amount to an independent cause of action." *Johnson*, 604 F. Supp. 3d at 1311.

Some courts, prior to *Green*, reached an opposite conclusion by relying on *Morgan*'s statement that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113; *e.g., Porter v. Cal. Dep't of Corrs.*, 419 F.3d 885, 893 (9th Cir. 2005) (refusing to consider discrete acts as part of a hostile-work-environment claim); *O'Connor v. City of Newark*, 440 F.3d 125, 128-29 (3d Cir. 2006) (section 1983 case) (suggesting that discrete acts could not be aggregated under a continuing-violation theory). Whatever the merits of this reading of *Morgan*, it is no longer tenable after

*Green*.[9] In *Green*, the Court made clear that this language from *Morgan* concerned the timeliness of *disparate-treatment*—rather than *hostile-work-environment*—claims. As *Green* explained, "*Morgan* . . . noted that even if a claim of discrimination based on a single discriminatory act is time barred, that same act could still be used as part of the basis for a hostile-work-environment claim." 578 U.S. at 562 n.7; *see also Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003) (noting that "*Morgan* abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers" but stating that "the Court did not apply its holding to hostile work environment claims"); *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1184-85 (10th Cir. 2003) (similar).

Indeed, even in those circuits discussed above that had suggested prior to *Green* that discrete acts could not form part of a hostile work

---

[9] Moreover, *Morgan*'s language at most suggests that *time-barred* discrete acts cannot be considered as part of a hostile work environment, not that discrete acts *in general* have no place in a hostile-work-environment claim. *See Guessous*, 828 F.3d at 222-23 (drawing this distinction). Here, however, the district court did not suggest that the discrete acts were non-cognizable because they were time barred; instead, it stated that discrete acts could *never* "form part of a hostile work environment claim." App.Vol.II at 317.

environment, some district courts have read *Green* as undermining that precedent. *E.g.*, *Deering v. Hackensack Bd. of Educ.*, No. 20-cv-3890, 2021 WL 508608, at *5 n.5 (D.N.J. Feb. 11, 2021) (relying on *Green* to conclude that "[t]o the extent *O'Connor* may suggest" that "independently actionable incidents should . . . not [be] 'saved up' for use in a hostile environment claim," that "would be an overreading of *Morgan*"); *Beckmann v. Ito*, 430 F. Supp. 3d 655, 675 (D. Haw. 2020) (relying on *Green* to depart from *Porter*). The district court thus erred by categorically excluding discrete acts from the hostile-work-environment analysis without considering whether those acts were sufficiently related to the course of conduct underlying the hostile-work-environment claim.

## CONCLUSION

For the foregoing reasons, the grant of summary judgment as to the claims addressed above should be reversed and the case remanded for further proceedings.

Respectfully submitted,

KARLA GILBRIDE
General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

ANNE NOEL OCCHIALINO
Assistant General Counsel

/s/ Chelsea C. Sharon
CHELSEA C. SHARON
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2889
chelsea.sharon@eeoc.gov

August 9, 2024

# CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the type-volume requirements of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because it contains 6,468 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14-point Book Antiqua font.

/s/ Chelsea C. Sharon
CHELSEA C. SHARON
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2889
chelsea.sharon@eeoc.gov

August 9, 2024

## CERTIFICATE OF DIGITAL SUBMISSION

I certify that the electronic version of the foregoing brief, prepared for submission via ECF, complies with the following requirements:

(1) All required privacy redactions have been made under Federal Rule of Appellate Procedure 25(a)(5) and Tenth Circuit Rule 25.5;

(2) With the exception of any redactions, every document submitted in digital form or scanned PDF format is an exact copy of the written document filed with the clerk; and

(3) The ECF submission has been scanned for viruses with the most recent version of Windows Defender and is virus-free according to that program.

/s/ Chelsea C. Sharon
CHELSEA C. SHARON
Attorney

August 9, 2024

## CERTIFICATE OF SERVICE

I certify that on August 9, 2024, a copy of the foregoing brief was electronically filed using the Court's CM/ECF system, which will result in service on all counsel of record.

I further certify that seven (7) paper copies of the foregoing brief will be filed with the Court as required by Tenth Circuit Rule 31.5.

/s/Chelsea C. Sharon
CHELSEA C. SHARON
Attorney

August 9, 2024