**CASE NO. 24-2055**
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

---

JERRY SHARPE-MILLER, Plaintiff-Appellant,

vs.

WALMART, INC., Defendant-Appellee.

---

On appeal from the United States District Court
for the District of New Mexico
The Honorable Kea W. Riggs, United States District Judge
D.C. No. 2:22-CV-00406-KWR-GJF

---

# APPELLEE WALMART INC.'S ANSWER BRIEF

---

Oral Argument is not requested

Larry J. Montaño
Olga M. Serafimova
**HOLLAND & HART LLP**
110 N. Guadalupe, Suite 1
Santa Fe, New Mexico 87501
lmontano@hollandhart.com
omserafimova@hollandhart.com
(505) 988-4421

Clara B. Burns
**KEMP SMITH LLP**
Post Office Box 2800
El Paso, Texas 79999-2800
Clara/Burns@kempsmith.com
(915) 533-4424

**ATTORNEYS FOR APPELLEE WALMART INC.**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........ ii

PRIOR RELATED APPEALS ........ iv

TABLE OF AUTHORITES ........ v

ISSUES PRESENTED FOR REVIEW ........ 1

STATEMENT OF THE CASE ........ 2

I. Nature of the Case and Course of Proceedings ........ 2

STATEMENT OF THE FACTS ........ 3

I. Plaintiff's Employment History with Walmart ........ 3

II. Plaintiff's Demotion ........ 6

III. Plaintiff's Resignation ........ 7

IV. Plaintiff's Allegations of Hostile Work Environment ........ 10

V. Plaintiff's Allegations of Retaliation ........ 14

VI. The District Court's Grant of Summary Judgment ........ 15

SUMMARY OF ARGUMENT ........ 19

ARGUMENT ........ 20

I. Standard of Review ........ 20

II. Summary Judgment Is Proper on Plaintiff's Disparate Treatment Claim Premised on His 2019 Demotion ........ 21

A. There is No Evidence that Plaintiff Was Demoted Due to His Sexual Orientation ........ 21

B. Walmart Articulated Its Legitimate, Non-Discriminatory Reason at the Time of Plaintiff's Demotion ........ 26

III. Summary Judgment Was Proper on Plaintiff's Disparate Treatment Claim Premised on His Voluntary Resignation ..................................28

IV. Summary Judgment Was Proper on Plaintiff's Hostile Work Environment Claim. ....................................................................32

V. Summary Judgment Was Proper on Plaintiff's Retaliation Claim .....41

CONCLUSION ..........................................................................................45

STATEMENT OF COUNSEL AS TO ORAL ARGUMENT ................................46

CERTIFICATE OF COMPLIANCE ......................................................46

CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS 46

CERTIFICATE OF SERVICE ...........................................................46

## PRIOR RELATED APPEALS

None.

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Bennet v. Windstream Commc'ns, Inc.*,
792 F.3d 1261 (10th Cir. 2015) ....................15

*Bones v. Honeywell*,
366 F.3d 869 (10th Cir. 2004) ....................23

*Bostock v. Clayton Cnty.*,
590 U.S. 644 (2020)....................2

*Boutros v. Avis Rent A Car Sys., LLC*,
802 F.3d 918 (7th Cir. 2015) ....................27

*Burlington Indus. v. Ellerth*,
524 U.S. 742 (1998)....................33

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................21

*Chavez v. New Mexico*,
397 F.3d 826 (10th Cir. 2005) ....................40

*Davis v. United States Postal Serv.*,
142 F.3d 1334 (10th Cir. 1998) ....................39

*Federated Mut. Ins. Co. v. Botkin Grain Co.*,
64 F.3d 537 (10th Cir. 1995) ....................20

*Green v. Brennan*,
578 U.S. 547 (2016)....................29

*Hinds v. Sprint/United Mgmt. Co.*,
523 F.3d 1187 (10th Cir. 2008) ....................41, 42, 44

*Kendrick v. Penske Transp. Servs., Inc.*,
220 F.3d 1220 (10th Cir. 2000) ....................31

*McCue v. Kansas Dep't of Human Resources*,
165 F.3d 784 (10th Cir. 1999) ....................................................32, 41, 42, 44

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)........................................................................................16

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024)........................................................................................29

*Nulf v. International Paper Co.*,
656 F.2d 553 (10th Cir. 1981) .........................................................................27

*Public Serv. Co. v. Continental Casualty Co.*,
26 F.3d 1508 (10th Cir. 1994) .........................................................................20

*Serna v. Colorado Dep't of Corr.*,
455 F.3d 1146 (10th Cir. 2006) .......................................................................21

*Shapolia v. Los Alamos Nat. Lab'y*,
992 F.2d 1033 (10th Cir. 1993) .......................................................................21

*Shero v. City of Grove*,
510 F.3d 1196 (10th Cir. 2007) .......................................................................21

*Sprague v. Thorn Ams., Inc*,
129 F.3d 1355 (10th Cir. 1997) .......................................................................33

*Stover v. Martinez*,
382 F.3d 1064 (10th Cir. 2004) .............................................................18, 41, 44

*Tabor v. Hilti, Inc.*,
703 F.3d 1206 (10th Cir. 2013) .......................................................................21

*Tex. Dep't of Cmty. Affairs v. Burdine*,
450 U.S. 248 (1981)........................................................................................28

*Throupe v. Univ. of Denver*,
988 F.3d 1243 (10th Cir. 2021) .......................................... 17, 22, 24, 26, 29, 43

*Twigg v. Hawker Beechcraft Corp.*,
659 F.3d 987 (10th Cir. 2011) .........................................................................20

*United States v. Leonard-Allen*,
739 F.3d 948 (7th Cir. 2013) .......... 27

*United States v. McBride*,
94 F.4th 1036 (10th Cir. 2024) .......... 19

*Vaughn v. Epworth Villa*,
537 F.3d 1147 (10th Cir. 2008) .......... 22

*Young v. Colo. Dep't of Corr.*,
94 F.4th 1242 (10th Cir. 2024) .......... 33

**FEDERAL STATUTES**

28 U.S.C. § 1291 .......... 3

42 U.S.C. § 1981 .......... 2

42 U.S.C. § 2000e-5(e)(1) .......... 22

Civil Rights Act of 1964 Title VII .......... 2, 15, 19, 20, 43

**NEW MEXICO STATUTES**

New Mexico Human Rights Act .......... 2, 15, 43

NMSA 1978, § 28-1-10(A) .......... 22

**FEDERAL RULES**

Fed. R. App. P. 32(a)(5)-(a)(7) .......... 46

Fed. R. Evidence 803(3) .......... 26, 27, 30

**CONSTITUTIONAL PROVISIONS**

New Mexico Constitution Article II, § 18 .......... 2

United States Constitution Fourteenth Amendment .......... 2

## ISSUES PRESENTED FOR REVIEW

I. Whether summary judgment is proper on Plaintiff-Appellant Jerry Sharpe-Miller's ("Plaintiff") disparate treatment employment discrimination claims?

II. Whether summary judgment is proper on Plaintiff's hostile work environment claims?

III. Whether summary judgment is proper on Plaintiff's employment retaliation claims?

## STATEMENT OF THE CASE

### I. Nature of the Case and Course of Proceedings

This is an employment discrimination case premised on sexual orientation. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 653 (2020) (holding that Title VII prohibits discrimination based on sexual orientation). Plaintiff initiated his lawsuit in State court. Walmart removed the case to the United States District Court for the District of New Mexico based on federal question jurisdiction. Walmart Inc.'s Notice of Removal, Doc. 1 [App. Vol. I, A0012].

Plaintiff asserted four causes of action against Walmart: (i) violation of Article II, Section 18 of the New Mexico Constitution (Count I); (ii) violation of the New Mexico Human Rights Act (Count II); (iii) violation of Title VII of the Civil Rights Act of 1964 (Count III); and (iv) violation of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. Section 1981 (Count IV). Plaintiff's First Amended Complaint, Doc. 20 [App. Vol. I, A0110-126].

Plaintiff claims that Walmart discriminated against him by "failing, or refusing to make, reasonable investigation into" his complaints of discriminatory treatment, maintaining "an unreasonable and baseless sexual harassment investigation," and unlawfully terminating him. *Id.*, ¶ 71 (Count II). He also alleges that Walmart "disparaged" him based on his sexual orientation, and imposed discriminatory "scheduling standards." *Id.*, ¶ 82 (Count III). Plaintiff also alleges

that Walmart retaliated against him for "drawing attention" to its improper conduct. *Id.*, ¶ 75; *see id.*, ¶ 83.

Walmart moved for summary judgment. *See* Walmart Inc.'s Motion for Summary Judgment, Doc. 57 [App. Vol. I, A0196-221]. The district court granted the motion. *See* Memorandum Opinion and Order, Doc. 62 [App. Vol. II, A0291-320]. The court entered judgment on December 28, 2023. Judgment, Doc. 63 [App. Vol. II, A0322].

On January 1, 2024, Plaintiff moved to alter or amend the judgment. *See* Plaintiff's Motion to Alter or Amend Judgment, Doc. 64 [App. Vol. II, A0323]. On March 7, 2024, the court denied Plaintiff's motion. *See* Memorandum Opinion and Order, Doc. 70 [App. Vol. II, A0488]. Plaintiff appealed on Monday, April 8, 2024. *See* Notice of Appeal, Doc. 71 [App. Vol. II, A0499]. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. The Equal Employment Opportunity Commission (the "EEOC") filed an amicus brief on August 9, 2024.

Plaintiff does not challenge the district court's grant of summary judgment on his constitutional claims (Counts I and IV). Accordingly, this appeal is limited to the employment discrimination and retaliation claims (Counts II and III).

## STATEMENT OF THE FACTS

### I. Plaintiff's Employment History with Walmart

Plaintiff, an openly gay man, *see* Motion for Summary Judgment, Exhibit B, Doc. 57-2 ("Pltf.'s Depo."), at 113 [Supp. App. 10-240], worked at a Walmart store

in Roswell from 2017 until he resigned in 2021. *Id.* at 25, 98. He started on the second-shift stocking team ("Cap 2"). *Id.* at 27, 31-32. During orientation, Plaintiff received training on Walmart's policies and procedures, including how to report discrimination, harassment, or retaliation in the workplace. *Id.* at 78, 79. He was made aware that employees could call Walmart's ethics hotline, or report issues to any supervisor, any manager, or to Human Resources. *Id.* at 80-81, 83.

A few months later, Walmart offered to promote Plaintiff to supervisor, *id.* at 32, but he chose to decline that role because he felt unprepared for it. *Id.* at 33. He remained in his associate position on the Cap 2 team for around two years. *Id.* at 31.

Plaintiff wanted to become a regional manager with Walmart, and he chose to move to a different role, called "the Cap 1 team," in the hope of preparing for that role. *Id.* at 35-36. The Cap 1 team was primarily responsible for unloading deliveries of frozen and dairy products. *Id.* at 37.

Plaintiff claims that some Cap 1 employees were given less burdensome assignments than him. *Id.* at 43. He filed a written complaint and, thereafter, he felt things improved. *Id.* at 43, 44-45. Plaintiff received an apology. *Id.* at 45. In submitting a written complaint to management, Plaintiff followed the reporting procedure he had learned during his training. *Id.* at 43, 45, 81.

In early 2019, Plaintiff again voluntarily changed roles, this time to food sales, to broaden his experience and knowledge. *Id.* at 48-50. Shortly thereafter, Walmart

offered him a promotion to assistant store manager at another Walmart store in Carlsbad, New Mexico. *Id.* at 5. Plaintiff declined this promotion. *Id.* at 57-58. In June 2019, with management's encouragement, Plaintiff applied for and was promoted to a departmental Supervisor at the Roswell store where he already worked. *Id.* at 48-49, 61. Around the same time, a female employee who identified as lesbian was also promoted to a supervisor position. *Id.* at 190, 191, 193.

In his new position, Plaintiff supervised between 15-27 employees. *Id.* at 70-71. As part of his supervisor training, Plaintiff received in-depth instruction on how to handle "claims." *Id.* at 67. "Claims" refers to damaged or defective products, and "it mainly falls on the supervisors or an assistant manager to handle that sort of stuff." *Id.* at 93. As Plaintiff has acknowledged, the proper procedure is to solidify any spilled liquid, collect it along with any broken glass or other debris, and bring everything to the claims cage, where the supervisor must fill out a slip for the claims team to process so the store can receive credit for the damaged product. *Id.*

In addition, Plaintiff received instruction on coaching and reprimanding employees, *id.* at 68, 69, as well as additional training on procedures for addressing discrimination, harassment, and retaliation in the workplace, *id.* at 73-74, 78, 82. He knew that HR's "doors [were always] open for everyone" if he was ever unsure how to handle any given situation. *Id.* at 83.

As a supervisor, Plaintiff brought several employee complaints to his manager's attention. *Id.* at 89, 91. He thought that the manager expected "a little too much out of [his] team, and a lot of them were getting tired of it and complaining to [Plaintiff] about it." *Id.* at 89. Plaintiff told the manager that his team was being overworked, testifying that "I don't think he liked that . . .very much." *Id.* at 90. These employee complaints were the only disagreements between Plaintiff and his manager. *Id.* at 91.

## II. Plaintiff's Demotion

Approximately two months after becoming Cap 2 supervisor, Plaintiff was demoted to associate in the Online Grocery Pickup ("OGP") department. *Id.* at 83, 87. As part of his demotion, Plaintiff's compensation decreased from $15.00/hour to $13.50/hour. *Id.* at 95. This followed a written reprimand for an issue he could not recall. *Id.* at 214.

Plaintiff met with two managers, where he "was told that [his] work wasn't satisfactory, that they were going to demote [him], and that [he] could either take the demotion or [he] would be fired." *Id.* at 88. Plaintiff accepted the demotion. *Id.* When asked to elaborate, Plaintiff testified that "when the market manager had come down, he saw something that I did or something, and he didn't really like it. And well, that's basically how they, you know, told me my work wasn't satisfactory because the market manager . . . he didn't like something that I did." *Id.* at 88.

Plaintiff recalled that "it was a claims issue because there was a split product on the truck when we were unloading." *Id.* at 92. The issue involved spilled merchandise. *Id.* at 93. Plaintiff "cleaned up the mess as best as [he] could, and [he] kind of kept it to one spot instead of bringing it back to [the claims cage]." *Id.* at 92. Plaintiff acknowledged proper procedure actually required him to "immediately" take the material to the claims cage, *id.* at 93, which he did not do. *Id.* at 94. "[T]o the best of [Plaintiff's] recollection, that's what the market manager didn't like[.]" *Id.* ("Yes. Because he was in the back room at the time when that happened."). Plaintiff never complained to anyone at Walmart about his demotion. *Id.* at 217.

## III. Plaintiff's Resignation

Following Plaintiff's demotion, his attendance suffered. *See* Pltf.'s Depo. at 152. Walmart tracks employees' attendance by way of a point system. *See* Motion for Summary Judgment, Exhibit D, Doc. 57-4, at 10-11 ("Melendez Depo.") [Supp. App. 243-253]. Every time an employee is absent, they accrue one point and, if the employee fails to give notice that they will be absent, they accrue two additional points. *Id.* Thus, a no call/no show results in three points total. *Id.* Once an employee exceeds five points, they are subject to termination. *See* Plaintiff's Response in Opposition to Motion for Summary Judgment, Exhibit 3, Doc. 59-3, at 52-53, 54, 56 ("Stark Depo.") [App. Vol. I, A0249-271].

As Plaintiff himself admitted, "for a while, [his] attendance was spotty." *Id.* at 153. Plaintiff would "call in" whenever he felt like he "needed a mental health

day." *Id.* at 167. Nevertheless, he "wanted to make a career with the company" and, at some point, he decided to rededicate himself to his job. *Id.* at 152.

Still, as of April 6, 2021, Plaintiff "had acquired five points again." Melendez Depo. at 27. As Plaintiff's then-manager, Ms. Cassandra Melendez, testified, she personally verified in Walmart's system that Plaintiff "had those [five] points in his record prior to April 6th of 2021." *Id.* at 29. ("Yes, sir."). A no call/no show would have added yet three more points to Plaintiff's record. *Id.* at 10.

On that day, Plaintiff served on jury duty. *See* Pltf.'s Depo at 102. He claims he had not been scheduled to work, and had the following two days off as well. *Id.* When Plaintiff returned to work on April 9 he was informed that he had been fired for not reporting to work on the 6th. *Id.*

According to Ms. Melendez, Plaintiff was terminated by Charles Stark, who was the OGP Supervisor. Melendez Depo. at 33. Mr. Stark told Ms. Melendez he terminated Plaintiff for violating Walmart's attendance policy. *Id.* at 34-35 (Q. "Did he explain his reasoning at all beyond the – the five marks . . . in the system, as his reasoning for wanting to terminate [Plaintiff]?" A. "No."); *see also* Stark Depo. at 29, 30, 33, 45. Over the years, Mr. Stark has fired several employees for violating this policy. *Id.* at 52-53, 54, 56. (There is no record evidence to support Plaintiff's speculation that these examples were "potentially fictitious." Opening Brief at 17.).

Employees' schedules are "system-generated" based on reported availability. Stark Depo. at 25, 26-27. Stark "couldn't change the schedules, personally." *Id.* Plaintiff's evidence showed he was initially taken off the schedule for April 6, 2021, but was later added back. Plaintiff's Response in Opposition to Motion for Summary Judgment, Exhibit 1, Doc. 59-1 [App. Vol. I, A0244]. If Plaintiff had not been scheduled to work on April 6, 2021, his absence would not have generated any points in Walmart's system; but, it did. *See* Stark Depo. at 31-33.

Once he was informed of his termination, Plaintiff asked "to speak to a higher-up" to explain that he had had jury duty on the 6th and, upon doing so, Walmart immediately reinstated his employment. *Id.* at 103. Indeed, he was asked to work that same day. *Id.* However, HR then realized Plaintiff had been removed from Walmart's system. *Id.* It took a couple days to fix the issue, and Plaintiff was compensated for all time worked. *Id.* at 104-07. HR apologized to Plaintiff for any inconvenience. *Id.* at 104.

However, "by that point, [Plaintiff] was just really frustrated . . . ." *Id.* at 103. A few days later, Plaintiff put in his two-weeks' notice. *Id.* at 108. In full, Plaintiff's letter of resignation read:

> To whom it may concern:
>
> Please accept this letter as my notice of resignation from Walmart effective April 16, 2021 to April 30, 2021. The memories and lessons I've made and learned during my employment here will truly be memorable. I hope a two-week notice is sufficient for you to find a

> replacement for me. If I can help to train my replacement or tie up any loose ends, please let me know. Thank you very much for the opportunity to work here.
>
> Sincerely,
> Jerry Sharpe-Miller
> Walmart Associate for Online Grocery Pick-up.

*See* Motion for Summary Judgment, Exhibit E, Doc. 57-5 [Supp. App. 268]. As Plaintiff testified, "I put four years in the company and, all of a sudden, I just got fired out of the blue, and it just – I don't know, it all hit me very, very, very hard. And at that point, . . . I didn't know if I wanted to stay. I don't know. I just put in my two weeks, and I said, I can't do this anymore. That's what I told myself." Pltf.'s Depo. at 101.

## IV. Plaintiff's Allegations of Hostile Work Environment

When asked about his specific allegations of a hostile work environment, Plaintiff testified that the first discriminatory act he experienced occurred about two months into his employment. *Id.* at 118, 121, 125. Plaintiff had a conversation with an assistant store manager outside of Plaintiff's chain of supervisors named Aaron Jones, who asked Plaintiff if Plaintiff had been with his male partner the previous day. *Id.* at 117-118. When Plaintiff said "no," he claims Mr. Jones told him that, "if homosexuals got any more rights, . . . we might as well legalize pedophilia and bestiality." *Id.* at 203. Plaintiff did not report this incident to upper management, because he had heard a rumor that Mr. Jones retaliated against employees. *Id.* at 118,

120, 121, 122, 126. Plaintiff had no other negative interactions with Mr. Jones. *Id.* at 123.

Then, around June of 2017, Plaintiff claims that another coworker named Andrew Spicer asked him if he was afraid to break a fingernail while the two of them unloaded merchandise. *Id.* at 128, 130, 132. Plaintiff did not report this incident either. *Id.* at 134.

Plaintiff next testified that, in May of 2019, he overheard someone (he does not know who) say the phrase "Jerry, the fairy" as he left a back room of the store. *Id.* at 134. Plaintiff did not report this comment to anyone at Walmart. *Id.* at 135.

The same month, he claims that an assistant store manager named Jazmine Zamora jokingly commented that Plaintiff "had a cat walk, that his hips swing a lot . . . ." *Id.* at 136. And he contends that another assistant manager, Antoinette Morro, also said that he "had a cat walk." *Id.* at 138. Plaintiff did not tell Ms. Zamora or Ms. Morro that he found their comments offensive, nor did he report them to upper management. *Id.* at 137, 138. And, Plaintiff admitted that he does "walk with a sway or a manner that would be described as a 'cat walk'[.]" *Id.* at 139. ("Yes. I guess, I would say so.").

Plaintiff also testified that, while he was a supervisor on the Cap 2 team, two minor male associates, who are twins, bent their wrists in a manner he viewed as a comment on his sexuality. *Id.* at 156. ("They would kind of do, like, the whole

wrist thing."); *id.* at 157 ("[W]hen I'd walk by, they'd do, like, the bent-wrist motion, and they'd generally only do it when I would walk by."). Plaintiff acknowledged that, as a supervisor, it was his responsibility to address this behavior, but admitted that he never did; nor did he report it to anyone at Walmart. *Id.* at 158.

Two weeks after Plaintiff's demotion, around September 2019, HR informed Plaintiff that these minor associates had made a sexual harassment complaint against him. *Id.* at 141-42. The minors had alleged that Plaintiff had asked about their sexual orientation. *Id.* at 147. The minors further alleged that Plaintiff had tried to "come on to them, that [he] was, like, flirting with them or something, and that [he] was just making inappropriate advances." *Id.* at 143. Plaintiff was given the opportunity to submit a response, and he wrote a statement denying the allegations. *Id.* at 142, 143-42, 149-50. Plaintiff never heard anything else about these allegations or Walmart's investigation, nor did he suffer any disciplinary consequences. *Id.* at 151, 152, 154.[1]

Following the minors' complaint, Plaintiff testified another employee called him a "pedophile . . . [i]n passing . . . ." *Id.* at 210. Plaintiff did not report this incident to anyone at Walmart. *Id.* at 211.

---

1 Plaintiff's assertion on appeal that "Walmart refused to inform [Plaintiff] of the precise nature of the allegations," Opening Brief at 14, is incorrect.

Plaintiff viewed it as suspicious that these coworkers made their allegations "shortly after [his] demotion and not before." *Id.* at 149. In his Amended Complaint, Plaintiff alleged the investigation was retaliatory. *See* Plaintiff's First Amended Complaint, Doc. 20, at ¶ 75 [App. Vol. I, A0110-126]. However, during his deposition, Plaintiff admitted that Walmart had no choice but to investigate the allegations. *See* Pltf.'s Depo. at 153-54. Plaintiff's assertion on appeal that the investigation was "hostile" or lasted "for 2 years" are not supported by the record evidence. Opening Brief at 13, 55.

Plaintiff additionally testified that, between April 2020 and April 2021, there was a lot of turn-over, with Walmart hiring a number of younger male associates during the pandemic. *Id.* at 165. He claims some of them used a derogatory word for gay people, but not addressed to him. *Id.* at 166. Plaintiff did not address these comments with any of them, nor did he report them to anyone at Walmart. *Id.* at 166. Plaintiff also says he overheard Andrew Spicer and another employee use derogatory terms not directed to him. *Id*. at 204. While another employee told Plaintiff she had reported these comments to Walmart, *id.* at 204-05, 208, Plaintiff did not. *Id.*

Indeed, Plaintiff never reported to management any of the incidents he later alleged in litigation, *id.* at 127-28, 168-69, 182, and admitted he never gave Walmart an opportunity to address them, *id.* at 181. This was so even though Plaintiff was familiar with Walmart's policies against discrimination and harassment and the

resources that existed to address such behavior, *id.* at 163, including specifically how to report discrimination based on sexual orientation, *id.* at 199-200. Plaintiff knew he could report misconduct to a supervisor, a manager, HR, or the ethics hotline. *Id.* at 228. Plaintiff admitted these resources afforded him adequate "opportunities to report the discriminatory comments and actions[,]" but that he never did so. *Id.* at 182, 183. Also, Plaintiff testified there were no witnesses to these events. *Id.* at 140. Moreover, Plaintiff's assertion on appeal that he "testified to his prior written complaints being ignored by the store co-manages at the time, Ivan Lujan and Larissa Lozano" is not supported by the evidence in the record. Opening Brief at 10.

The only occurrence Plaintiff testified that a Walmart supervisor was aware of was when an unidentified employee drew an image on the whiteboard for the OGP team of a person with curly hair with the word "faggot" written across the forehead. *Id.* at 224. The image remained on the board for about two hours, and the supervisor promptly erased it once she saw it. *Id.* at 225, 229. Plaintiff did not report this image to management. *Id.* at 225. He also testified he was unaware of any coworkers with curly hair who were homosexual. *Id.* at 229-30.

## V. Plaintiff's Allegations of Retaliation

As to his allegations of retaliation, Plaintiff testified that he thought his "vacation requests were constantly denied . . . ." but did not know why. *Id.* at 196. Plaintiff offered only one specific example — in 2020 or 2021, he had requested to take a day off on his birthday two months in advance. *Id.* at 196-96. After his request

was denied, an associate told Plaintiff that another employee had put in a request for the same day a month and a half after Plaintiff, yet that employee's request had been approved. *Id.* at 196. Plaintiff offered no basis for the associate's hearsay information.[2] *Id.*

## VI. The District Court's Grant of Summary Judgment

The district court granted Walmart's motion for summary judgment. *See* Memorandum Opinion and Order, Doc. 62 ("Opinion") [App. Vol. II, A0291-321]. After noting that the same standard applies under the New Mexico Human Rights Act and Title VII, *id.* at 15-16 (citing *Walton v. New Mexico State Land. Off.*, 113 F. Supp. 3d 1178, 1193 (D.N.M. 2015) and *Lovato v. N.M. Env't Dep't*, 733 F.3d 1283, 1296-97 (10th Cir. 2013)), the district court analyzed Plaintiff's allegations under three separate rubrics: disparate treatment, hostile work environment, and retaliation.

For Plaintiff's disparate treatment claim, the district court observed that "Plaintiff must present sufficient indirect evidence to establish a prima facie case of discrimination" by showing, in relevant party, that (1) he suffered an adverse employment action (2) under circumstances giving rise to an inference of discrimination. Opinion at 16; *see Bennet v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015). With respect to Plaintiff's demotion, the court held that

---

[2] Plaintiff's assertion on appeal that he testified "other, non-openly identified as LGBTQ+ employees, consistently receiv[ed] the same day off requested" is not supported by the evidence in the record. Opening Brief at 14.

it did not constitute an adverse employment action, Opinion at 16-17, and that "[t]he evidence presented does not support a finding that this demotion was in any way motivated by Plaintiff's sexual orientation," *id.* at 17. As to Plaintiff's resignation, the court found "[t]he record does not support a finding that Plaintiff was constructively discharged by [Walmart]." *Id.* at 19. "The evidence presented indicates that Plaintiff resigned of his own free will." *Id.* at 20.

The district court further held that "Plaintiff has not established that the challenged actions occurred under circumstances that give rise to inferences of discrimination." *Id.* at 20. "Even if the actions taken by Defendant amount to adverse employment actions, the record does not support a finding that these actions suggest or give rise to an inference of sex discrimination or that [Plaintiff] was treated differently than other employees because of his homosexuality." *Id.*

The district court also found Walmart "had legitimate, nondiscriminatory reasons for its adverse employment actions." *Id.* at 21; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (setting out the burden-shifting framework applicable to disparate treatment discrimination claims). "As to Plaintiff's demotion, [Walmart] demoted Plaintiff because of his failure to comply with company protocols regarding spilled products, one of the primary responsibilities of supervisors or assistant managers." Opinion at 21. As to Plaintiff's termination, the court found there was sufficient evidence for a reasonable jury to conclude that,

"[w]hen Plaintiff failed to report to work due to jury duty, he had reached Walmart's point threshold for termination . . . . Because Plaintiff reached the point threshold for termination given his absences, [Walmart] had a legitimate, nondiscriminatory reason for termination given his absences." *Id.*

Last, the district court found that Plaintiff was unable to show that Walmart's "proffered reasons for its actions are pretextual." *Id.* at 21. The court properly disregarded all derogatory comments as hearsay because none were allegedly made by a decisionmaker involved in Plaintiff's demotion or termination. *Id.* at 21-22.

As to Plaintiff's hostile work environment claims, the district court found that Plaintiff failed to meet his prima facie burden of demonstrating (1) he was harassed on the basis of his sexual orientation, and (2) the harassment was severe or pervasive such that it altered the terms or conditions of his employment. *Id.* at 23, 24; *see also Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021) (prescribing elements for prima facie case of hostile work environment). The court "certainly [did] not condone [the homophobic] comments, gestures, or incidents" Plaintiff testified to. Opinion at 25 (internal quotation marks and citations omitted). Nevertheless, it concluded "Plaintiff has not established that a rational jury could find that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult." *Id.*

In support, the district court concluded that "[i]n weighing the totality of the circumstances, . . . the comments and incidents in question [are] offensive utterances that do not appear to have interfered with Plaintiff's work performance." *Id.* "[S]evere and pervasive conduct for the purposes or a hostile work environment claim requires much more." *Id.* Plus, "if employees create a hostile work environment, an employer can be held liable [only] if it 'knew or should have known about the [employee's] conduct but failed to stop it.'" *Id.* at 26 (quoting *Bertsch v. overstock.com*, 684 F.3d 1023, 1027 (10th Cir. 2012)). "Since Plaintiff did not report these purported hostile work environment conditions to management or supervisors, he has not established that Defendant knew or should have known about the conduct and failed to stop it." Opinion at 27. Also, the district court held "a defendant's discrete acts of demotion and termination and plaintiff's resignation cannot form part of a hostile work environment claim." *Id.*

As to Plaintiff's retaliation claim, the district court correctly noted Plaintiff had to establish a prima facie case by showing (1) he engaged in a protected activity, and (2) a causal connection between the protected activity and an adverse employment action. *Id.* at 28; *see also Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004) (setting out the elements of prima facie case of retaliation). The court then held that "Plaintiff has not established that he engaged in any protected opposition to discrimination." Opinion at 29.

In support, the district court noted that "[d]uring his four-year employment with Walmart, Plaintiff did not complain to supervisors or managers about the alleged discriminatory conduct he experienced. Nor did Plaintiff file a Title VII complaint . . . . Rather, Plaintiff only raised his discrimination claims after he resigned." *Id.* at 29; *see id.* at 17 ("Plaintiff has not established that he engaged in a protected activity when demoted and is, therefore, lacking causality and temporal proximity."). The court reiterated that Plaintiff's demotion and resignation were not adverse employment actions, Walmart articulated legitimate, nondiscriminatory reasons for each, and Plaintiff could not establish pretext for either. *Id.* at 30.

Plaintiff appeals the district court's judgment. His Opening Brief says that it also seeks review of a separate order denying his motion to alter or amend the judgment, but he offers no independent argument addressing that order. *See* Opening Brief at 7, 16, 21. This Court should not address Plaintiff's undeveloped argument. *See United States v. McBride*, 94 F.4th 1036, 1046 (10th Cir. 2024) (stating it is not the Court's role to guess how to analyze an undeveloped argument).

## SUMMARY OF ARGUMENT

The district court correctly concluded that there is insufficient evidence to support a finding in Plaintiff's favor on his disparate treatment, hostile work environment, and retaliation claims against Walmart. The record evidence is insufficient for Plaintiff to establish that he was constructively discharged, or to raise an inference of discrimination with respect to his demotion or termination. Likewise,

the record evidence is insufficient for Plaintiff to establish that Walmart's legitimate, nondiscriminatory reasons for each were pretextual.

Further, the record evidence is insufficient as a matter of law for Plaintiff to establish that he was subjected to severe or pervasive harassment due to his sexuality, or that Walmart knew or should have known of any such harassment. Nor is there any evidence that Plaintiff engaged in any protected activity to support a claim for retaliation. For all of these reasons, this Court should affirm the district court's judgment.

## ARGUMENT

### I. Standard of Review

This Court reviews the district court's grant of summary judgment de novo, applying the same underlying legal standards. *See Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 997 (10th Cir. 2011). In so doing, the Court may consider "the entire record on appeal. . . ." *Federated Mut. Ins. Co. v. Botkin Grain Co.*, 64 F.3d 537, 543 (10th Cir. 1995).

"Summary judgment is proper only if the record shows there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Public Serv. Co. v. Continental Casualty Co.*, 26 F.3d 1508, 1514 (10th Cir. 1994) (internal quotation marks and citation omitted). "A fact is material if, under governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the

nonmoving party on the evidence presented." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat. Lab'y*, 992 F.2d 1033, 1036 (10th Cir. 1993). The moving party may meet this burden by demonstrating there is "a complete failure of proof concerning an essential element of the nonmoving party's case . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party meets its initial burden, the nonmoving party cannot "rest on the pleadings[,] but must set forth specific facts by reference to affidavits, deposition transcripts, or other exhibits to support [his] claim[s]." *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). Courts must view all evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor. *See Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007).

## II. Summary Judgment Is Proper on Plaintiff's Disparate Treatment Claim Premised on His 2019 Demotion

### A. There is No Evidence that Plaintiff Was Demoted Due to His Sexual Orientation.

Both Plaintiff and the EEOC argue the district court erred in concluding that his 2019 demotion did not constitute an adverse employment action. *See* Opening

Brief, at 26-32; *see also* Amicus Brief, at 9-20. This argument does not support reversal for several independent reasons.

First, the argument is time-barred. This claimed adverse action occurred in 2019. Therefore, to preserve this issue, Plaintiff would have had to make a charge of discrimination within 300 days, or no later than October 26, 2020. *See* 42 U.S.C. § 2000e-5(e)(1); NMSA 1978, § 28-1-10(A). In fact, however, he did not raise this allegation until January 18, 2022, when he filed his administrative charge against Walmart. *See* Defendant Walmart Inc.'s Notice of Removal, Doc. 1-2, ¶ 45 [App. Vol. I, A0025]. The argument is thus time-barred. While the limitations issue was not raised or addressed by the district court, Walmart specifically pled it, *see* Answer to Plaintiff's First Amended Complaint, Doc. 25, ¶ 98 [App. Vol. I, A0141], and this Court can, of course, "affirm on any basis supported by the record." *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1150 (10th Cir. 2008). The Court thus should not reach the merits of this issue at all.

But even if this issue had not been foreclosed at the outset, it still would not have supported reversal, because the district court separately concluded Plaintiff failed to establish the third element of his prima facie case—that he was demoted under circumstances raising an inference of discrimination—in any event. *See* *Throupe*, 988 F.3d at 1252 ("Summary judgment is appropriate . . . if [the plaintiff]

cannot establish each of the three elements for a prima facie case of . . . discrimination.”).

When questioned about the circumstances of his demotion, Plaintiff discussed only two events: first, Plaintiff admitted that, shortly before he was demoted, he had failed to follow proper procedure in handling a potentially dangerous claims issue. This failure to follow procedure was cited as the reason for Plaintiff’s demotion. Second, Plaintiff testified that, two weeks *after* he was demoted, two associates he previously supervised made a sexual harassment complaint against him. Plaintiff admitted that Walmart had no choice but to investigate this complaint. Neither circumstance supports an inference of discrimination. While Plaintiff speculated “there might have been a connection” between his demotion and the sexual harassment complaint, Pltf.’s Depo. at 149, to defeat a motion for summary judgment, “evidence, including testimony, must be based on more than mere speculation, conjecture or surmise.” *Bones v. Honeywell Int’l, Inc.*, 366 F.3d 869, 875-76 (10th Cir. 2004).

Plaintiff asserts he “was demoted without any prior reprimand or warning . . . or . . . documented reason.” Opening Brief, at 29. First, this assertion contradicts Plaintiff’s own testimony that he did receive a written reprimand as a supervisor. *See* Pltf.’s Depo. at 214. Second, this assertion is irrelevant. “[A] plaintiff can raise an inference of discrimination by showing . . . [he was treated] differently from

similarly situated employees who are not part of the plaintiff's protected class. An employee is similarly situated if he shares the same supervisor, is subject to the same standards governing performance evaluation and discipline, and has similar relevant employment circumstances, such as work history." *Throupe*, 988 F.3d at 1252 (internal quotation marks and citation omitted). Thus, to raise an inference of discrimination, Plaintiff would have to show that heterosexual employees were not demoted without any warning or written documentation of reasons. Plaintiff's unsupported assertion that, "[o]ver the course of deposition, he confirmed several instances of disparate treatment" notwithstanding, Opening Brief at 10, there is no such evidence in the record.

Plaintiff additionally asserts he "testified that [one of the manager's] words and demeanor supported an inference of sexual orientation discrimination, since he was threatened with termination." Opening Brief at 29. This assertion is not supported by Plaintiff's deposition testimony. *See supra*, Sec. V, at 43.

Plaintiff additionally argues the district court erred in not considering "several derogatory comments [Plaintiff] heard . . . [as] evidence of discrimination," Opinion at 21; *see also* Opening Brief at 52. The district court held such comments were hearsay that could not be attributed to Walmart, as the statements were not made by anyone "involved in the decision-making process affecting the employment action involved." Opinion at 21-22 (quoting *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir.

1995). Plaintiff argues the district court erred, because the comments were "directly witnessed by the Plaintiff himself . . . ." Opening Brief at 52. Plaintiff's present-sense-impression argument misses the mark – the district court properly declined to consider these statements as evidence of discrimination *by Walmart*, because they were not uttered by anyone involved in the decision-making process pertaining to Plaintiff's demotion (or termination). The effect these statements had on Plaintiff is not relevant here.

The EEOC argues that the district court erred by relying "on Walmart's purported non-discriminatory reasons at the prima facie stage," because "a plaintiff is only required to raise an inference of discrimination, not dispel the non-discriminatory reasons subsequently proffered by the defendant." Amicus Brief at 12 (internal quotation marks and citation omitted). The EEOC's argument likewise misses the mark – the question is whether there is evidence in the record sufficient to support an inference of discrimination. The EEOC does not point to any such evidence, whereas Plaintiff asserts one of the managers was "hostile, rude, and already 'butting heads' [with Plaintiff.]" Opening Brief at 31. However, Plaintiff never testified the manager was "hostile" or "rude," and merely noted the two had "butted heads" in the past over unrelated employee complaints. Thus, the district court correctly held that "Plaintiff has not established that the challenged action[] occurred under circumstances that give rise to inferences of discrimination."

Opinion at 20. Affirmance is warranted. *See Throupe*, 988 F.3d at 1253 ("Summary judgment is appropriate . . . [if a plaintiff] cannot establish each of the elements for a prima facie case . . . ."). The judgment should be affirmed.

### B. Walmart Articulated Its Legitimate, Non-Discriminatory Reason at the Time of Plaintiff's Demotion

The district court held that, "[a]s to Plaintiff's demotion, [Walmart] demoted Plaintiff because of his failure to comply with company protocols regarding spilled products, one of the primary responsibilities of supervisors or assistant managers. [Walmart] has articulated that Plaintiff's failure to complete this responsibility was a legitimate, nondiscriminatory reason for the demotion." Opinion at 21. On appeal, both Plaintiff and the EEOC argue the district court erred, because "Walmart introduced no admissible evidence as to the reasons for [Plaintiff's] demotion . . . ." Amicus Brief at 14; *see also* Opening Brief at 30 ("Walmart could produce no document, written evidence, affidavit from the market manager, or personnel files, that untimely logging of spilled milk was the true reason for [Plaintiff's] demotion.").

According to the EEOC, it was improper for the district court to rely on "[Plaintiff's] deposition testimony as proof that the demotion stemmed from failure to comply with company policies regarding spilled products." Amicus Brief at 14. The EEOC is incorrect. Under Federal Rule of Evidence 803(3), "[a] statement of the declarant's then-existing state of mind [ ] such as motive" is "excluded by the

rule against hearsay, regardless of whether the declarant is available as a witness . . . ." Plaintiff's testimony is admissible as it establishes the decision-makers' then-existing motive. Specifically, Plaintiff testified: "*I was told* that my work wasn't satisfactory, [and] that they were going to demote me . . . ." Pltf.'s Depo. at 87 (emphasis added). When asked, "What else *did they tell you* about that exactly?" *id.* at 88 (emphasis added), Plaintiff responded: "*They said*, I guess, when the market manager had come down, he saw something that I did or something, and he didn't really like it." *Id.* at 88. Plaintiff recalled he was told "it was a claims issue because there was a split product on the truck when we were unloading." *Id.* at 92 (emphasis added). Plaintiff then admitted he had failed to follow proper procedure for handling spilled liquids and broken glass. *Id.* at 94. Thus, Plaintiff's testimony as to what the decision-makers stated as the reason for his demotion is admissible under F.R.E 803(3) as their then-existing motive. *See Nulf v. International Paper Co.*, 656 F.2d 553, 559 (10th Cir. 1981) ("plaintiff, herself, provided a legitimate, nondiscriminatory rationale for her discharge"); *Boutros v. Avis Rent A Car Sys., LLC*, 802 F.3d 918, 925 (7th Cir. 2015) (permitting hearsay statements when offered to show employer's non-discriminatory motive for adverse employment action); *United States v. Leonard-Allen*, 739 F.3d 948, 954 (7th Cir. 2013) (explaining that a "witness's statement is not hearsay if the witness is reporting what he heard someone else tell him for the purpose of explaining what the *witness* was thinking, at the time

or what motivated him to do something”). Contrary to the EEOC’s assertion, the district court did not “rely on [Plaintiff’s] speculation as to what might have motivated Walmart.” Amicus Brief at 16. Instead, the district court relied on Plaintiff’s admissible testimony as to the decision-makers’ stated then-existing motive.

The EEOC argues Plaintiff’s testimony is nevertheless insufficient because it “lack[s] the specificity required to sustain an employer’s second-step burden.” Amicus Brief at 15. The EEOC is incorrect once again. “[T]he defendant’s explanation of its legitimate reasons must be clear and reasonably specific” in order to rebut the inference of discrimination and so that “the plaintiff [can] be afforded ‘a full and fair opportunity’ to demonstrate pretext . . . .” *Tex. Dep’t of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981). Both requirements are met here – the decision-makers demoted Plaintiff because of his admitted failure to follow proper claims procedure. Any hypothetical inference of discrimination is rebutted thereby, and Plaintiff has a full and fair opportunity to demonstrate pretext, if he can. Because neither the EEOC nor Plaintiff challenge the district court’s finding that Plaintiff failed to establish pretext, its decision should be affirmed.

## III. Summary Judgment Was Proper on Plaintiff’s Disparate Treatment Claim Premised on His Voluntary Resignation

Neither Plaintiff nor the EEOC challenge the district court’s conclusion that the evidence is insufficient to establish Plaintiff was constructively discharged in

April of 2021.[3] Instead, Plaintiff argues he "successfully demonstrated a prima facie case for employment discrimination when he was terminated, without prior warning, explanation, or notice, by Walmart . . . ." Opening Brief at 45. Plaintiff never argued below that his termination was an actionable adverse employment action. *See* Plaintiff's Response In Opposition to Motion for Summary Judgment, Doc. 59 [App. Vol. I, A0226-238]; Opening Brief at 8 ("[Plaintiff] claims constructive discharge."); *see also Throupe*, 988 F.3d at 1254 ("We will not consider an argument that was not fully briefed and decided by the district court."). Further, Plaintiff testified he was reinstated on the same day and was compensated for all time worked while not yet back in Walmart's payroll system. Thus, Plaintiff's temporary termination does not constitute an adverse employment action. *See Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024) (employees must show "some 'disadvantageous' change in an employment term or condition").

Assuming Plaintiff could meet his burden of establishing an adverse employment action in 2021, the district court properly concluded the evidence was insufficient to support an inference of discrimination. Ms. Melendez testified she personally verified that, as of April 6, 2021, Plaintiff had "again" accumulated

[3] Plaintiff argues he may have been constructively discharged "prior to demotion" and "prior to termination." Opening Brief at 41. However, a necessary precondition to a constructive discharge is cessation of employment. *See Green v. Brennan*, 578 U.S. 547, 555 (2016) (a plaintiff "must also show that he actually resigned.").

five points on his attendance record, and that a no call/no show adds three points. Mr. Stark told her he terminated Plaintiff for attendance, *see* F.R.E. 803(3) (evidence of the declarant's then-existing motive is admissible), and he provided several examples of other employees he personally terminated for crossing the five-point threshold. And, as soon as Plaintiff explained that he was not supposed to work on April 6, 2021 due to jury duty, he was reinstated, properly compensated, and apologized to. These circumstances do not support an inference of discrimination.

While Plaintiff asserts Mr. Stark "secretly scheduled [Plaintiff] to work, on a day [Plaintiff] would be attending jury duty," Opening Brief at 33, there is no evidence to that effect in the record. Indeed, Stark testified, "I couldn't change the schedules, personally." Stark Depo. at 25, 26-27. Plaintiff offered no evidence to the contrary. *Contrast with* Opening Brief at 32 (incorrectly claiming Stark had "admitted access and responsibility over the calendaring system"); *id.* at 42 (incorrectly claiming "Stark scheduled [Plaintiff], on a day he was attending jury duty."); *id.* at 45 (incorrectly claiming "Stark added [Plaintiff] for April 6, 2021, into the calendaring system").

As to burden-shifting, the EEOC argues "Walmart [ ] failed to introduce any evidence to show that the purported five-point attendance threshold was the reason for [Plaintiff's] termination[]," because "Walmart's summary-judgment briefing relied on the testimony of [Ms.] Melendez . . . ." Amicus Brief at 18. However, this

Court reviews "the entire record on appeal . . . ." *Botkin Grain Co.*, 64 F.3d at 543. The record shows Plaintiff had reached five points as of April 6, 2021; he was placed back on the schedule for that day; his failure to report to work added three more points to his record; Mr. Stark told Ms. Melendez he fired Plaintiff for attendance; and Mr. Stark terminated several other employees for the same reason. Thus, Walmart articulated a legitimate, nondiscriminatory reason for Plaintiff's short-lived termination.

The EEOC does not point to any evidence of pretext. *See* Amicus Brief at 20 (arguing Plaintiff can prevail without showing pretext). Plaintiff relies on HR Lead Timothy Rocha's testimony that, "generally," when someone doesn't show up for work, "[HR] tries to call the associate . . . ." *See* Plaintiff's Response to Motion for Summary Judgment, Exhibit 2, Doc. 59-2, at 20 [App. Vol. I, A0247]. According to Plaintiff, "[c]ombined with the inconsistencies in testimony between manager Stark and manager Melendez, about who fired [Plaintiff] and why, the scheduling irregularities . . . , the lack of any written documentation on the reasons for . . . termination, and Stark's lapses in memory, pretext for discriminatory motive is established." Opening Brief at 47 (bold omitted). Plaintiff's argument is purely speculative. First, Mr. Rocha's testimony as to what happens "generally" does not establish a violation of policy. *Contrast with Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (pretext may be shown "with evidence that the

defendant acted contrary to . . . company policy"). The same is true of the "lack of any written documentation," as Plaintiff offers no evidence that documentation was required.

Second, there is no inconsistency between Mr. Stark's and Ms. Melendez's testimonies—indeed, Mr. Stark testified he may have terminated Plaintiff. *See* Stark Depo. at 29 ("I could have. I don't recall."). And, Mr. Stark's inability to recollect this fact years later is unremarkable. *See id.* at 33 (testifying he did not have "a specific memory of whether or not [he] specifically fired [Plaintiff]").

Lastly, without more, that Plaintiff was put back on the schedule for April 6, 2021 does not suggest discriminatory pretext. At this stage, the burden is on Plaintiff "to establish by a preponderance of all the evidence in the case that the legitimate reasons offered by the defendant were a pretext for discrimination." *McCue*, 165 F.3d at 789 (internal quotation marks and citation omitted). Because there is no evidence suggesting Plaintiff was temporarily terminated because of his sexuality, the district court should be affirmed.

## IV. Summary Judgment Was Proper on Plaintiff's Hostile Work Environment Claim.

To overcome summary judgment on his hostile work environment claim, Plaintiff must establish, in relevant part, that he received unwelcome harassment based on his sexuality severe or pervasive enough to alter a term, condition, or privilege of his employment, such that it created an abusive environment. *See*

*Young v. Colo. Dep't of Corr.*, 94 F.4th 1242, 124 (10th Cir. 2024). "In determining whether [a plaintiff can make] the requisite showing, we must consider a variety of factors, including, [1] the frequency of the discriminatory conduct; [2] its severity; [3] whether it is physically threatening or humiliating, or a mere offensive utterance; and [4] whether it unreasonably interferes with an employee's work performance." *Sprague v. Thorn Ams., Inc,* 129 F.3d 1355, 1365 (10th Cir. 1997) (internal quotation marks omitted) (alterations in original). In addition, Plaintiff must show that Walmart either "knew or should have known about the conduct and failed to stop it." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 759 (1998). The court properly concluded the evidence in the record is insufficient for Plaintiff to meet his burden.

The district court considered "the totality of circumstances"—assistant store manager Aaron Jones' isolated statement in early 2017 that, "if homosexuals got any more rights, [ ] we might as well legalize pedophilia and bestiality;" Andrew Spicer's isolated comment in mid-2017 that Plaintiff was afraid to break a nail; the isolated, unidentified comment "Jerry, the fairy" in May 2019; assistant managers Zamora and Morro's isolated, joking comments that Plaintiff walked like a cat; the wrist-bending motions of the two minor associates Plaintiff supervised; the isolated comment by an unidentified employee subsequent to these associates' sexual harassment complaint against Plaintiff calling him a pedophile; the use of the word "faggot," not towards Plaintiff, by unidentified younger associates between April of

2020 and April of 2021; the use of the words "faggot" and "butt pirate," not towards Plaintiff, by Andrew Spicer and another employee; the fact that there were no witnesses to any of these incidents; and the fact that Plaintiff never reported any of these incidents. *See* Opinion at 23-27.

The district court properly considered the severity of each incident, the frequency of the incidents, the contents of the comments, the extent to which comments or conduct were directed at Plaintiff, and the apparent effect they had, or lack thereof, on Plaintiff's work performance. *Id.* The district court concluded "the record does not support a finding that Plaintiff suffered a steady barrage of opprobrious [] comments that a reasonable person would find hostile or abusive[,]" *id.* at 24 (internal quotation marks and citation omitted); that "Plaintiff has not established that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult[,]" *id.* at 25 (internal quotation marks and citation omitted); that, under the totality of the circumstances, "the comments and incidents . . . [are] offensive utterances that do not appear to have interfered with Plaintiff's work performance[,]" *id.*; that "severe and pervasive conduct for the purposes of a hostile work environment claim requires much more[,]" *id.* at 26; that, "[w]hile possibly homophobic and inappropriate, these comments Plaintiff alleges fall short of the hostile work environment threshold[,]" *id.*, at 27; that Walmart's "discrete acts of demotion and termination and a plaintiff's

resignation cannot form part of a hostile work environment claim[,]" *id.*; and that, "[s]ince Plaintiff did not report these purported hostile work environment conditions to management or supervisors, he has not established that [Walmart] knew or should have known about the conduct and failed to stop it . . . " *id.*

In an apparent effort to amplify the evidence, Plaintiff alleges "Jones . . . held influential status among members of the overall management team." Opening Brief at 9. There is no evidence in the record to support this characterization. Plaintiff further asserts "many offensive statements were directly witnessed by managers, with no sign of concern." *Id.* at 11. There is no evidence in the record to support this assertion. Without citing to the record, Plaintiff also asserts derogatory slurs were "overheard by [the employees'] direct supervisors Larissa Lozano, Ty, and Isabel Ramirez, without any corrective action." *Id.* Not only is there no evidence in the record to support this assertion, but Plaintiff testified, "If they overheard it, I don't know." Pltf.'s Depo. at 207.

Likewise, the assertion that, following the sexual harassment complaint by the two minors, Plaintiff "testified getting called unfounded slurs by co-workers, including the words 'pedophile,' and similar insults" is inaccurate at best. *Id.* at 13. Instead, Plaintiff testified to a single instance where another employee called him a pedophile in passing. And, the statement that "[Plaintiff] testified to several instances of being singled-out, teased, and disrespected by those who had direct

supervisory control over his very livelihood" is a gross exaggeration. *Id.* at 10. The only evidence involving Plaintiff's superiors concerned the two admittedly joking (and accurate) comments that Plaintiff walks like a cat.

Both Plaintiff and the EEOC point out the district court "did not discuss at all the drawing of an individual with the word 'faggot' across their forehead." Amicus Brief at 22; Opening Brief at 54 (incorrectly claiming the court "refus[ed]" to consider the drawing). However, this single, isolated, short-lived incident which was not directed at Plaintiff, or any homosexual employee, does not change the balance of the district court's analysis. Also, Plaintiff's claim the image "was directly reported to manager Corina Lopez" is not accurate. Opening Brief at 15. Plaintiff testified that Ms. Lopez, a supervisor of OGP, saw the image and immediately erased it. *See* Pltf.'s Depo. at 223. Plaintiff did not report the image to anyone. *Id.* at 225.

Plaintiff additionally asserts the Court should consider the denial of Plaintiff's requested day off on his birthday, as well as the "meritless sexual harassment investigation . . . ." Opening Brief at 57. However, there is no evidence in the record that Plaintiff's request for a day off was denied because of his sexuality. Further, Plaintiff admitted that, once the sexual harassment complaint was made, Walmart had no choice but to investigate it. Thus, Plaintiff cannot establish that either event constitutes unwelcome harassment based on his sexuality, let alone severe or pervasive harassment.

On the law, the EEOC inaccurately asserts the district court committed legal error when it "(1) dismissed conduct it deemed unrelated to [Plaintiff's] sexual orientation; (2) disregarded conduct that was not directed at [Plaintiff] or attributable to a specific individual; (3) demanded [Plaintiff] show that the conduct interfered with his work performance; (4) required a 'steady barrage' of offensive comments; and (5) refused to consider discrete discriminatory acts as part of the claim." Amicus Brief at 21. The district court did none of these things; rather, it considered the totality of the circumstances, affording each piece of evidence its proper weight in the balancing of factors.

Specifically, the district court did not "conclud[e] that only three incidents . . . had homophobic connotations" and "dismiss[ ] the remainder of the incidents as unrelated to [Plaintiff's] sexual orientation and . . . therefore, insufficient to impose liability." Amicus Brief at 21. A fair reading of the Opinion makes clear that the district court was merely laying out Walmart's position. *See* Opinion at 24 ("Defendant admits that three of the incidents . . . have homophobic connotations . . ."). Contrary to the EEOC's representation, the district court did not engage in a "mechanical approach . . . whereby it determined that certain . . . conduct was based on sexual orientation (and therefore relevant to [Plaintiff's] claims), while determining that the other conduct was not based on sexual orientation (and was therefore irrelevant to his claims)." Amicus Brief at 22 (alterations, internal

quotation marks, and citation omitted). To the contrary, the district court acknowledged that all of the alleged comments were "potentially epithets that engender offensive feelings . . . ." Opinion at 24; *see also id.* at 25 (addressing and evaluating all comments the EEOC asserts the district court disregarded).

Likewise, the district court did not "dismiss[ ] conduct that was not directed at [Plaintiff] or not attributable to a specific individual." Amicus Brief at 23. As to the latter, the district court merely noted Walmart's position that "Plaintiff is unable to identify the declarant in several of these instances . . . ." Opinion at 24. Again, the district court did not "dismiss these incidents as insufficient to impose liability." Amicus Brief at 23.

As to the former, the district court appropriately observed that "Plaintiff admitted that several of these derogatory comments were not directed at him." Opinion at 26. Of course, direct insults are more offensive than general, inconsiderate comments. The district court did not err in taking this distinction into account when weighing the severity of the alleged harassment. *See id.* Contrary to the EEOC's reading of the Opinion, the district court never held, nor did it suggest, that "discriminatory conduct [must] be attributable to a specific individual or directed at the plaintiff to support a hostile-work-environment claim." Amicus Brief at 24. Thus, the EEOC's discussion on this subject is irrelevant. *Id.*

The EEOC next asserts "[t]he district court suggested that the relevant incidents could not amount to a hostile work environment because they did not interfere with [Plaintiff's] work performance." Amicus Brief at 25 (alterations, internal quotation marks, and citation omitted). It did not. In *Davis v. United States Postal Serv.*, this Court stated: "Whether an environment is hostile or abusive can be determined only by looking at all the circumstances . . . including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." 142 F.3d 1334, 1341 (10th Cir. 1998) (alterations, internal quotation marks, and citation omitted). In citing and applying this standard, the district court found "the comments and incidents in question to be offensive utterances that do not appear to have interfered with Plaintiff's work performance." Opinion at 25. Contrary to the EEOC's representation, the district court did not "require that [a plaintiff] quit or want to quit the employment in question[,]" nor did it require Plaintiff to show a decline in "tangible productivity or work performance." Amicus Brief at 25 (internal quotation marks and citations omitted).

Similarly, the district court did not require a "steady barrage" of opprobrious comments. *See* Amicus Brief at 26. As the EEOC acknowledges, a number of this Court's decisions "have used this 'steady barrage' phrase . . . ." *Id.* The district court

merely quoted one of them—*Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005). *See* Opinion at 25. Contrary to the EEOC's assertion, the district court did not exhibit any "apparent focus on numerical insufficiency," nor did it contravene the appropriate "qualitative approach." Amicus Brief at 27. Instead, it analyzed all of Plaintiff's allegations and found them to be neither sufficiently severe, nor sufficiently pervasive. *Id.*, at 24-28; *contrast with* Amicus Brief at 27 (erroneously claiming the district court did not "separately consider the severity prong").

Lastly, the EEOC challenges the district court's observation that, "while the Tenth Circuit has not explicitly addressed this question, a majority of circuits have held that a defendant's discrete acts of demotion and termination and a plaintiff's resignation cannot form part of a hostile work environment claim." Opinion at 27. The EEOC argues at length that "discrete discriminatory acts can form part of a hostile-work-environment claim." Amicus Brief at 27-33. Thus, the EEOC concludes "the district court [ ] erred by categorically excluding discrete acts from the hostile-work-environment analysis . . . ." Amicus Brief at 33. The EEOC is once again incorrect. The district court properly found that Plaintiff's demotion, termination, and resignation were neither adverse employment actions, nor discriminatory in nature; it follows they cannot, and do not, constitute "discrete discriminatory acts." The EEOC's argument on this subject is not relevant.

Importantly, neither the EEOC nor Plaintiff challenge the district court's conclusion that Plaintiff "has not established that Defendant knew or should have known about the conduct and failed to stop it." Opinion at 27. Plaintiff's unsupported, conclusory assertion that "at least fourteen (14) **managers** achieved actual notice of a hostile workplace" should be disregarded. Opening Brief at 54 (bold in original). Plaintiff does not provide a citation to the record, *see id.*, nor is there any evidence in the record to support it. The district court should be affirmed.

## V. Summary Judgment Was Proper on Plaintiff's Retaliation Claim

"To state a prima facie case of retaliation, [Plaintiff] must demonstrate that (1) [he] engaged in a protected opposition to discrimination; (2) [Walmart] took an adverse employment action against [him]; and (3) there exists a causal connection between the protected activity and the adverse action." *Stover*, 382 F.3d at 1071. "[T]o qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [the anti-discrimination statutes.]" *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008); *see also McCue v. Kansas Dep't of Human Resources*, 165 F.3d 784, 789 (10th Cir. 1999) (filing an internal or external complaint of discrimination constitutes "protected activity"). The burden then shifts on the employer to show the adverse action was taken for a legitimate reason. *Id.* From there, "the burden returns to the plaintiff to establish by a preponderance of all the

evidence in the case that the legitimate reasons offered by the defendant were a pretext for discrimination." *Id.* (internal quotation marks and citation omitted).

As the district court correctly found, there is no evidence in the record that Plaintiff engaged in any protected activity. *See* Opinion at 29. During his deposition, Plaintiff repeatedly acknowledged that he never reported to Walmart any of the alleged discriminatory conduct he experienced. Further, the issues Plaintiff did raise with management—unfair work assignments and subordinates being overworked—were unrelated to any "practice made unlawful by [the anti-discrimination statutes.]" *Hinds*, 523 F.3d at 1203; *see also* Opening Brief at 49 (asserting Plaintiff "provided evidence of retaliation for written complaints, directly to management, of both scheduling disparities, disparate treatment, and overwork.").

On appeal, Plaintiff claims he "had filed a prior, written complaint of retaliation, in conjunction with other employees, in contradiction of Walmart's contention that he never reported on retaliation to management." Opening Brief at 20. Plaintiff's citation to the record is to his testimony regarding a complaint he made early on in his employment that certain employees received less burdensome assignments. *Id.* Because this complaint was unrelated to unlawful employment discrimination, it does not constitute protected activity. *See Hinds*, 523 F.3d at 1203; *McCue*, 165 F.3d at 789.

Plaintiff additionally argues that "[t]hreats of termination coming from managers, for asking questions about the true reasons for [Plaintiff's] demotion, would be outlawed under the plain text of the statutes, both Title VII and the [New Mexico Human Rights Act.]" Opening Brief at 47. However, contrary to his assertion, Plaintiff never "testified he was threatened with termination if he asked too many questions about the true causes of his demotion." *Id.*, at 47. Instead, Plaintiff testified he was told his job performance was unsatisfactory, and he "could either take the demotion or [he] would be fired." Pltf.'s Depo. at 87. When asked whether he requested an explanation, Plaintiff said he did not "press the issue too much" because he "butted heads a little bit while [he] was a supervisor" with one of the managers over unrelated employee complaints. *Id.* at 89, 91. Thus, Plaintiff was afforded a choice between two disciplinary options for poor performance; he was never threatened, and certainly not for asking questions.

Plaintiff additionally claims his written response to the sexual harassment complaint filed against him constitutes protected activity. *See* Opening Brief at 20. Plaintiff did not preserve this argument below. *See* Plaintiff's Response In Opposition to Motion for Summary Judgment, Doc. 59 [App. Vol. I, A0226-238]; *see also Throupe*, 988 F.3d at 1254 ("We will not consider an argument that was not fully briefed and decided by the district court."). In addition, during his deposition, Plaintiff testified that, in his response, he merely denied the associates' allegations.

Thus, there is no evidence in the record that the written response included any protected activity. *See Hinds*, 523 F.3d at 1203; *McCue*, 165 F.3d at 789. Further, the written report was filed *after* Plaintiff's demotion, and six months before his voluntary resignation. As such, there is no evidence of a "causal connection" between the response and any adverse employment action. *Stover*, 382 F.3d at 1071.

Plaintiff alleges he "testified that he felt retaliated against, by being demoted, due to making verbal complaints to manager Lujan, and that he was demoted very shortly after 'butting heads' with Lujan." Opening Brief at 55. In fact, Plaintiff offered no such testimony. While Plaintiff testified he told Mr. Lujan his team felt overworked, Plaintiff never connected these complaints to his demotion. More importantly, complaints of team members feeling overworked do not constitute protected activity for purposes of a retaliation claim. *See Hinds*, 523 F.3d at 1203; *McCue*, 165 F.3d at 789.

Lastly, the Amended Complaint alleged Plaintiff's temporary termination was retaliatory, and Plaintiff testified he felt retaliated against whenever his requests for time off would be denied. However, because there is no evidence of Plaintiff engaging in any protected activity, his retaliation claims fail. The district court should be affirmed.

## CONCLUSION

For the foregoing reasons, Appellee Walmart Inc. respectfully requests that the district court's Memorandum Opinion and Order granting its Motion for Summary Judgment in its entirety be affirmed.

Dated: October 7, 2024.

Respectfully,

*/s/ Larry J. Montaño*

______________________________

Larry J. Montaño
Olga M. Serafimova
Holland & Hart LLP
110 N. Guadalupe, Suite 1
Santa Fe, New Mexico 87501
lmontano@hollandhart.com
omserafimova@hollandhart.com
(505) 988-4421

Clara B. Burns
Kemp Smith LLP
Post Office Box 2800
El Paso, Texas 79999-2800
Clara/Burns@kempsmith.com
(915) 533-4424

**ATTORNEYS FOR APPELLEE WALMART INC.**

## STATEMENT OF COUNSEL AS TO ORAL ARGUMENT

Appellee Walmart Inc. does not request oral argument.

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2007/2010 in 14-point Times New Roman. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), as modified by the Court's order of June 26, 2018, because it contains 10,591 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

## CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS

In accordance with the court's CM/ECF User's Manual, I hereby certify that all required privacy redactions have been made. In addition, I certify that the hard copies of this pleading that may be required to be submitted to the court are exact copies of the ECF filing, and the ECF submission has been scanned for viruses with the most recent version of Microsoft Defender, last updated on Oct. 7, 2024 and, according to the program, is free of viruses.

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2024, a copy of the foregoing answer brief was electronically filed using the Court's CM/ECF system, which will result in service on all counsel of record.

*/s/ Larry J. Montaño*

______________________________

Larry J. Montaño
Olga M. Serafimova

33075566