No. 24-2055

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT
————————

JERRY SHARPE-MILLER,

Plaintiff-Appellant,

v.

WALMART, INC.

Defendant-Appellee.
————————

ORAL ARGUMENT REQUESTED
————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW MEXICO,
HON. KEA W. RIGGS, UNITED STATES DISTRICT JUDGE, PRESIDING
2:22-cv-00406-KWR-GJF

————————

APPELLANT'S REPLY BRIEF

————————

Derek Garcia
New Mexico Legal Aid, Inc.
PO Box 25486
Albuquerque, NM 87125
505 768-6120
derekg@nmlegalaid.org
*Counsel for Plaintiff-Appellant*
October 28, 2024

1

# TABLE OF CONTENTS

Table of Contents…………………………………………………………..2

Table of Authorities………………………………………………………..2

**Argument In Reply**………….…………………..………………………...3

    **I.**    **Granting of Summary Judgment in Walmart's Favor on Plaintiff's Disparate Treatment and Unlawful Demotion Claim is Reversible Error……………………………………………………………..2**

    **II.**    **Granting Summary Judgment on Plaintiff's Hostile Work Environment Claim Reversible Error………………………………..10**

    **III.**    **Summary Judgment on Retaliation Claim Improper………………11**

    **IV.**    **Resignation Under Duress and Hostile Work Environment Construed as Termination; Actual Termination Argued As Adverse Employment Action Establishing a Prima Facie Case ……………………………...13**

    **V.**    **Demotion in Retaliation Claim Not Time Barred………………….16**

    **VI.**    **Plaintiff Established, Through His Own Testimony Subject to Cross-Examination, That He Was Subjected to Severe and Pervasive Harassment Due to His Sexual Orientation………………………….17**

    **VII.**    **Plaintiff-Appellant Established a Prima Facie Case for Discrimination………………………………………………………19**

    **VIII.**    **Plaintiff Successfully Demonstrated a Hostile Work Environment…21**

Conclusion…………………………………………………………………...24

# TABLE OF AUTHORITIES

*Bennett v. Windstream Commc'ns, Inc,* 792 F.3d 1261 (10th Cir. 2015) ...………...15

*Boutros v. Avis Rent Car Sys., LLC*, 802 F.3d 918, 925 (7th Cir. 2015) ………...7,8

*Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183 (10th Cir. 2003)……………16

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)……................4-5,19-21

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977)………………20

*Nulf v. International Paper Co.*, 656 F.2d 553, 559 (10th Cir. 1981)…………...6, 7

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981)………………...8

*Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir. 1995)..………………………………...22

*United States v. Leonard-Allen*, 739 F.3d 948, 954 (7th Cir. 2013) ……………….7

## **ARGUMENT IN REPLY**

I.    **Granting of Summary Judgment in Walmart's Favor on Plaintiff's Disparate Treatment and Unlawful Demotion Claim is Reversible Error**

The Appellee's argument that the summary judgment was proper on the Plaintiff's disparate treatment claim is flawed. Walmart contends that the Plaintiff was demoted due to a legitimate, non-discriminatory reason, namely, his alleged failure to comply with company protocols regarding a spilled product.    Answer Brief, at 7.  The idea that Plaintiff was demoted, due to not immediately taking the spilled milk to the claims cage area, after actually cleaning up the milk, came from Plaintiff's own speculation about the possible causes for demotion Dep. Sharpe-Miller, 94 (**App Vol. II , 387**).   This testimony is otherwise speculative, and therefore unreliable testimony concerning the true reasons for demotion.  It is error

3

for the court to rely on this speculative, double hearsay-based testimony, as a means to establish the undisputed material fact that Appellant was demoted for performance-based reasons. Rather than attach any admissible evidence to their Motion for Summary Judgment, or an Affidavit from the market manager himself, or herself, written personnel records, or *any* admissible testimony from the hostile managers, the District Court erred in relying on Plaintiff's own, honest speculation as to other possible reasons for demotion. The District Court also erred in taking this speculative testimony out of context, in that the excuse was relayed to Sharpe-Miller by a manager with whom Appellant was already butting heads, and is now deceased, Ivan Lujan (**App Vol. II 386, 401, 449**). For these reasons, it cannot serve as a legitimate excuse or true reason for demotion, from a still unidentified market manager. Rather than requiring Walmart to meet its burden of production under the second step of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the District Court improperly concluded the true reason for demotion to be: failing to take a spilled product immediately to the claims cage area, after Sharpe-Miller accomplished the actual cleanup of spilled milk, and informed his managers of his intention to take it to a caged area, after more urgent work was accomplished (***Id.*, 329, 30**).

Walmart's argument also fails to counter that the Plaintiff's demotion was a result of discriminatory acts, hostility, and animus based on sexual orientation. The

District Court committed error when it failed to substantially discuss the fact the Plaintiff was threatened with outright termination, if he asked too many questions about the true reasons for termination. (***Id.*, at 386**).  The fact that Plaintiff was threatened with termination, should he ask too many questions about the true causes of demotion, must be construed as true, at summary judgment stage.  This is a fact which should have been adopted by the District Court, as true, when analyzing Plaintiff's discrimination, hostile workplace, unlawful demotion, unlawful termination, and retaliation claims, whether under Title VII or the New Mexico Human Rights Act.  The fact that Plaintiff was threatened with termination, should he ask too many questions about the true causes of demotion, successfully establishes "circumstances giving rise to a reasonable inference of discrimination," shifting the burden back to Walmart to demonstrate legitimate reasons for demotion under the *McDonnell Douglas* standards.  Failing to take a spilled product immediately to a caged area, after Plaintiff actually cleaned up the spilled milk to the satisfaction of the immediate manager, is not a legitimate reason for imposing $1.50 / hour cut in Plaintiff's pay, especially when it relies on speculation by Plaintiff himself concerning other possible motives of an unidentified witness.  Similarly, the Plaintiff's own speculation is no substitute for the testimony of the market manager herself or himself (which Walmart failed to produce or identify in any of their initial Fed. R. 26 disclosures or discovery), and who wasn't an eyewitness to the actual

5

spilled product, in either case. The District Court adopted this unreliable reason, as allegedly relayed through two additional managers, who never testified themselves, due to being deceased and no longer working for Walmart. Given that Walmart produced no written information, personnel records or performance reviews, or competent testimony that Jerry Sharpe-Miller was ever deficient as an employee, or reprimanded for performance, the District Court should not have concluded that Walmart successfully shifted the burden back to Plaintiff. Even if it did, the Plaintiff successfully demonstrated pretext and inference of discrimination as the true reason, and should have been allowed to reach a jury on this central question of disputed, material fact. It is reversible error to fail to consider, also, that the demotion was accompanied by the threat of termination, should too many questions be asked. (***Id.***, **386**). This fact neither Walmart, Inc., nor the District Court, may ethically ignore. It may not cherry pick speculative facts helpful to Walmart, while ignoring facts helpful to Plaintiff, under any ethical reading of the summary judgment standard.

Defendant cites *Nulf v. International Paper Co.*, 656 F.2d 553, 559 (10th Cir. 1981), for the proposition that Plaintiff's own speculation may be used against him under FRE 803(3), as the true motive for demotion, and state of mind of an absent, and unidentified, market manager. Answer Brief, 27. The factual circumstances in *Nulf* are highly distinguished from the instant case, since Nulf also wasn't threatened with termination, should she ask to many questions as to the true motive:

Nulf testified on both direct and cross-examination that she told the branch manager she did not want the telephone operator job he was demanding she perform and that he then fired her. In fact, she testified that she would only answer three of the eight phone lines plus overflow calls.

*Nulf v. Int'l Paper Co.*, 656 F.2d 553, 559 (10th Cir. 1981). The instant situation is entirely dissimilar, in that Plaintiff: 1) never refused *any* assigned job duties, nor was he ever accused of insubordination; 2) Sharpe-Miller had no known or documented performance issues; 3) Sharpe-Miller clearly identified that his testimony as to the state of mind of the market manager was speculative, using words like, '… I guess, he didn't like something that I did …' (**App Vol. II, 386**); 4) Nulf wasn't threatened with termination should she ask too many questions; 5) Nulf didn't experience weeks of rumors that the entire management team was thinking of demoting him, prior to it occurring, Dep. Sharpe-Miller, 87 (***Id.***); 6) Nulf's adverse employment action did not occur near the same time as a baseless, and undocumented, sexual harassment investigation was being conducted by more senior management; 7) Nulf's own testimony was not double hearsay, as is the testimony of the unidentified market manager here.

Walmart cites *Boutros v. Avis Rent Car Sys., LLC*, 802 F.3d 918, 925 (7th Cir. 2015) and *United States v. Leonard-Allen*, 739 F.3d 948, 954 (7th Cir. 2013). Answer Brief, 27. These cases also refer to the admissibility of hearsay statements offered to show an employer's non-discriminatory motive for an adverse

employment action, but are also highly factually distinguished from the instant case. Afram Boutros suffered adverse employment actions due to accusations, by the employer, that he was dishonest and insubordinate. *Boutros* 802 F.3d at 920. Here, Walmart's own HR lead, Timothy Rocha, testified that there were no known performance-based or disciplinary issues with Sharpe-Miller, nor was Appellant ever accused of insubordination or dishonesty (**App Vol. II, 440**).

The cases cited by Appellee also do not involve instances of double hearsay, but instead single hearsay exceptions. Regardless, the 7th Circuit is not controlling authority in this Court. This Court should not be persuaded by controlling authority when Walmart argues: "The EEOC is incorrect once again. '[T]he defendant's explanation of its legitimate reasons must be clear and reasonably specific' in order to rebut the inference of discrimination and so that 'the plaintiff [can] be afforded 'a full and fair opportunity' to demonstrate pretext . . . .' *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981). Both requirements are met here – the decision makers demoted Plaintiff because of his admitted failure to follow proper claims procedure. Any hypothetical inference of discrimination is rebutted thereby, and Plaintiff has a full and fair opportunity to demonstrate pretext, if he can." Answer Brief, 28. Because Defendant itself offered **no legitimate or documented reason** for Plaintiff's demotion; and because the illegitimate reason he was told came from a manager with whom he was frequently "butting heads," (**App Vol. II, 386**); and

because Plaintiff was also threatened with termination, pretext for discriminatory motive should have been concluded by the District Court, allowing final jury determination.

The Plaintiff, therefore, as openly LGBTQ+, has provided evidence of a hostile work environment, including derogatory comments, discriminatory treatment, and verbal threats of termination, which Walmart was unable to refute, using any competent, non-speculative, or admissible, evidence. The timing of the Plaintiff's demotion, following his complaints about this treatment, suggests a probable link between his sexual orientation and the adverse employment action of demotion. The Appellee's argument that the Plaintiff failed to establish a prima facie case of discrimination is therefore unconvincing. The Plaintiff has provided sufficient evidence to raise an inference of discrimination, and the burden should shift to the Appellee to provide a legitimate, non-discriminatory reason for the demotion, which Walmart could not do, utilizing written records or "write-ups," performance reviews, verifiable witness testimony capable of being cross-examined, or other such basic evidence. The fact that Plaintiff did not report on his demotion to additional managers, or to the ethics hotline, is also unavailing, because Walmart's **managers themselves** were the ones engaged in discriminatory acts. *See* (App Vol. I, 230); (App Vol. II, 386) (**managers** Ivan Lujan and Thomas Mirelez were those responsible for allegedly delivering an unidentified market manager's

reasons for demotion to Plaintiff). *See also* Appellant's Opening Brief, at 28. These same **managers** had explicitly threatened Plaintiff with termination should he report higher up, make any waves, or ask any questions, and "… he couldn't afford to be fired." (**App. Vol. II, 386**). This makes Walmart's repeated allegations that Plaintiff did not report this to management unavailing, because managers Lujan and Mirelez had actual notice of their own discriminatory behavior, coupled with their own threat of termination, should Plaintiff do anything but remain silent. Similarly, it was error for the District Court to ignore Plaintiff's attorney's "objection to foundation," to conclude the true reason for demotion was performance based, as Sharpe-Miller cannot be reasonably expected to ascertain the state of mind of an unidentified market manager, with anything other than unreliable speculation (**App Vol. II, 388).**

## II. Granting Summary Judgment on Plaintiff's Hostile Work Environment Claim Reversible Error

Walmart, Inc.'s argument that summary judgment was proper on the Plaintiff's hostile work environment claim is also flawed. The Appellee contends that Sharpe-Miller failed to establish that the harassment was severe or pervasive enough to alter the conditions of his employment. Answer Brief, at 33. However, this argument fails to consider the cumulative effect of the discriminatory comments and treatment the Plaintiff experienced. The Plaintiff has provided evidence of numerous instances of derogatory comments and discriminatory treatment, which,

taken together, could be seen by a jury as creating a hostile work environment. The Appellee's argument that the Plaintiff failed to report the hostile work environment conditions to management is also unconvincing. The Plaintiff reported the hostile graffiti with the words "FAGGOT" scrawled directly to manager Lopez, but his complaints were ignored, the evidence erased, no investigation done, and no incident reports were filed. This same manager failed, or refused, the provide Plaintiff with a voluntary statement about the incident. Plaintiff's reports, directly to a Walmart manager, were successfully whitewashed, and effectively erased from history (**App Vol. II, at 419, 20**). Walmart's contention that "Plaintiff did not report this image to management," is simply wrong. Answer Brief, at 14. The Plaintiff has therefore provided sufficient evidence, because his own cross-examined testimony must be believed as true, to establish a prima facie case of a hostile work environment, and the summary judgment on this claim should be reversed.

### III. Summary Judgment on Retaliation Claim Improper

The Appellee's argument that summary judgment was proper on the Plaintiff's retaliation claim is flawed. The Appellee contends that the Plaintiff failed to establish a causal connection between his protected activity and the adverse employment actions of demotion, constructive discharge, and actual termination. Answer Brief, at 42. However, this argument fails to consider the timing of the Plaintiff's demotion, which occurred shortly after he complained about the

discriminatory treatment he was experiencing, some of which was coming directly from, and/or directly witnessed by managers themselves, and those in significant positions of power and authority. The timing of the demotion suggests a probable link between the Plaintiff's protected activity of complaining of disparate treatment (scheduling disparities in denying him his birthday off), baseless sexual harassment investigation perpetuated indefinitely by senior management without documented resolution, and the adverse employment action of demotion and threat of termination, should Sharpe-Miller ask too many questions. Q. So you're saying that Isabel and Emilio are part of a group of employees that warned you that Aaron Jones had a history of retaliating against employees? [Sharpe-Miller]A. **Yes. But not just Aaron Jones, other management as well.**" Dep. Sharpe-Miller, 119 (**App Vol. II, 394, emphasis added**). The culture of retaliation, existing among the senior management team, must be construed as true at summary judgment stage. The written complaints Jerry Sharpe-Miller also testified to filing, complaining of disparate work assignment, subordinate overwork, and scheduling preferences for non-openly identified as LGBTQ+ employees, were never produced by Walmart in written discovery, despite written pre-litigation preservation demands and open investigations with the NM HRB/EEOC. ([Sharpe-Miller]: "And we did report it to management. I believe -- I believe I wrote a statement along with the four other people -- Gayle, Destiny, and Isabel. Three other people, I should say." Dep. Sharpe-

Miller 43-5 (**App Vol. II, 375**).  Sharpe-Miller's written response to the baseless sexual harassment investigation perpetuated by senior management, without resolution, was also never produced in written discovery requests (**App Vol. II, 452**).

The Appellee's argument that the Plaintiff failed to establish pretext is also unconvincing. The Plaintiff has provided evidence that the Appellee's proffered reason for the demotion, his alleged failure to comply with company protocols despite substantial cleanup of the actual spilled milk, was a pretext for discrimination.  The Plaintiff has therefore provided sufficient evidence to establish a prima facie case of retaliation, and the summary judgment in Walmart's favor on this claim should be reversed.  At the very least, Walmart should have been required to demonstrate "legitimate" reasons for the demotion and termination, using competent evidence, instead of double hearsay and speculation.

### IV.  Resignation Under Duress and Hostile Work Environment Construed as Termination; Actual Termination Argued As Adverse Employment Action Establishing a Prima Facie case.

Walmart argues that Plaintiff never argued that his termination and inexplicable and sudden removal from the payroll was an adverse employment action.  Answer Brief, 29.  This was argued below in several places, including directly in the First Amended Complaint, as a cause of action in Counts II and III:

"75. Defendant unlawfully retaliated against Plaintiff when it initiated and perpetuated an unreasonable and baseless sexual harassment investigation, **and**

**terminated his employment**, …," additionally incorporating by reference the previous paragraphs and factual background of the FAC. (**App Vol. I, 103**) (**emphasis added**). It was argued again in Response to Walmart's Motion for Summary Judgment, in requiring the District Court to adopt, as true, Plaintiff's Undisputed Material Facts D and E:

"[Pln. UMF] D. On April 6, 2021, Plaintiff was terminated without any prior reprimand or warning, **lawful cause**, or fully ascertainable, documented reason. [Def. Exh. B: Pl.'s Dep. at 88]. Pln. Exh. 3, Dep. of Supervisor Charles Stark, at 30, 33." Pln. Response to MSJ, at 11 and surrounding argument (**App Vol. I, 236**) (**emphasis added**).

Unlawful termination was argued, again, in Plaintiff's Motion for Reconsideration (Motion to Alter or Amend Judgment), on the identical issue of unlawful termination: "Defendants have produced no evidence, hard testimony, or written personnel records demonstrating that Plaintiff's work was *ever* unsatisfactory, as the true cause for his demotion, **and later termination**." (App Vol. II, 328). "The true causes for Plaintiff's termination were never definitively determined by either party, and therefore Plaintiff's version of facts as pled (i.e. that he was **terminated by the management team for discriminatory reasons**), deserves deference at summary judgment stage." (App Vol. II, 330) (**emphasis added**). Plaintiff requested the identical forms of relief in his Motion to Alter or

14

Amend Judgment, for the same substantive reasons now being argued, in his Opening Brief, and his Docketing Statement (Reversal of Counts II and III of the First Amended Complaint), and therefore Walmart's contention that he failed to preserve this issue below, in the District Court, or in his Opening Brief or Docketing Statement, are unpersuasive.  Answer Brief, at 19.

Lastly, resignation under duress of a hostile workplace constitutes constructive discharge.  Even if the Plaintiff wasn't terminated on April 6, 2021, when he was inexplicably removed from the payroll for attending jury duty, this Court should conclude that he was constructively discharged for having to enduring numerous uncorrected instances of a hostile workplace, prior to that date. *See Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1269 (10th Cir. 2015).  Here, Plaintiff showed that he had no other choice but to quit, or face continual damage to his own mental health, and his testimony and that of his therapist (in the form of medical records provided to Walmart in discovery), was left unchallenged by Walmart. (**App. Vol. II, 392, 406).**  The court applies an objective standard: The conditions of employment must be objectively intolerable; the plaintiff's subjective views of the situation are irrelevant. *Bennett,* 792 F.3d at 1269.  Here, Walmart never challenged the claim the Plaintiff was under considerable stress and anxiety, prior to termination, in its proffering of undisputed material fact, making the Plaintiff's own testimony, supported by his therapist's objective records, dispositive and objectively

satisfied.  No reasonable person could be expected to endure a humiliating demotion under threat of termination, baseless sexual harassment investigation, slurs and mocking by both managers and employees (both anonymous and by name), unaffected.

## V.    Demotion in Retaliation Claim Not Time Barred

Appellee argues that Plaintiff's unlawful demotion claim was time-barred. Answer Brief, at 22. This argument is unavailing under both state and federal law. The continuing violation doctrine applies to retaliation claims. If one act contributing to a retaliation claim is based on a series of actions and not a single, discrete act occurred within the statutory period for filing complaints, all acts creating the retaliation claim may be considered, including facts and evidence of facts that occurred prior to the one-hundred-eighty-day statute of limitations (300 day statute of limitations for cross-filed EEOC and federal charges) cut-off for filing complaints. *Charles v. NMSU Regents*, 2011- NMCA-057, 150 N.M. 17, 256 P.3d 29, cert. denied, 2011-NMCERT-001, 150 N.M. 558, 263 P.3d 900.   "[A] plaintiff may recover for discriminatory acts that occurred prior to the statutory limitations period if they are 'part of a continuing policy or practice that includes the act or acts within the statutory period.' *Mascheroni v. Bd. of Regents of the Univ. of Cal.*, 28 F.3d 1554, 1561 (10th Cir. 1994) (quoting *Martin v. Nannie & the Newborns, Inc.*, 3 F.3d, 1410 at 1415)."  *Davidson v. Am. Online, Inc*., 337 F.3d 1179, 1183 (10th

Cir. 2003). Because the demotion occurred because of prior, uncorrected written complaints of disparate treatment, and continuing baseless sexual harassment investigation, no claims made by Sharpe-Miller are properly time-barred, here.

## VI. Plaintiff Established, Through His Own Testimony Subject to Cross-Examination, That He Was Subjected to Severe and Pervasive Harassment Due to His Sexual Orientation

The Plaintiff has provided evidence of numerous instances of harassment, including derogatory comments and unfair treatment. This testimony, fully scrutinized and subject to hours of cross-examination, must be believed, as true, at summary judgment stage. Similarly, nothing clearly contradicting Plaintiff's honest recitation of events or facts, undermined his testimony in any way. Walmart's argument that these instances were isolated and not severe or pervasive enough to constitute harassment is a subjective interpretation of the facts, and is more properly a jury question. The severity and pervasiveness of harassment should be determined from the survivor / victim's perspective, not the defendant's interpretation (managers and supervisors never experience the discrimination they themselves cause, and fail to notice, document, investigate, or report). Should Walmart, Inc.'s, or a District Court's interpretation of what constitutes severe and pervasive harassment be controlling, in place of a jury, a 'see no evil, hear no evil,' approach will pervade workplace discrimination strategy, in order to avoid any liability. When the employer, acting through its agents, supervisors and managers, fails to notice any

harassment, it controls the story that none ever occurred, nullifying Plaintiff's jury demand. Erasing the blackboard of memory was simply accomplished, in this case, and the graffiti cleansed from the view of anyone with power to investigate, save those directly affected, but silenced under prior threat of termination. (**App Vol. II, 420**). Even Walmart admits that the hostile graffiti was immediately erased by a manager upon Sharpe-Miller's direct report, without a second thought. Answer Brief, 36. Misconstruing Sharpe-Miller's testimony to conclude the image was not reported to any *additional* manager, besides manager Lopez, is a disingenuous reading. If the law against retaliation is to have any meaning, it should at least require a manager or supervisor to proactively report and investigate hostile graffiti in the workplace, without the complaining party receiving any further threats to their physical safety, job security, and wellbeing.

Walmart's argument that the Plaintiff failed to establish that Walmart knew or should have known about the harassment is flawed. The plaintiff has provided evidence that he complained and/or provided notice about the harassment, demotion, slurs, and graffiti to at least fourteen (14) managers and supervisors, over the course of his entire employment, which put Walmart, Inc. on actual notice through its entire management team. Each manager who received actual notice of discriminatory treatment was highlighted throughout the Opening Brief, to arrive at the total number of fourteen (14) managers and supervisors to whom Sharpe-Miller directly reported

specific instances of discrimination and a hostile workplace. None of Sharpe-Miller's testimony supporting this final tally of managers was undermined as untrue by contrary evidence or testimony from Walmart. Walmart's argument that the Plaintiff did not report the harassment to the appropriate channels is a narrow interpretation of the employer's duty to prevent and address harassment in the workplace. Likewise, there can be no legitimate reason for failing to thoroughly document the graffiti, baseless sexual harassment investigation, or true causes for demotion, when Walmart's own trusted managers and agents directly received such information. The lack of paper trail, or written documentation, in this case, serves as ample evidence that Walmart failed in its burden of production under the second step of a *McDonnell Douglas* analysis.

### VII. Plaintiff-Appellant Established a Prima Facie Case for Discrimination

Walmart's additional argument that the Plaintiff failed to establish a prima facie case of discrimination is flawed. In addition to establishing a prima facie case for both retaliation and hostile work environment, Plaintiff established a prima facie case for overall discrimination. It was undisputed that Plaintiff belonged to a protected class as a gay male and that there were sufficient contextual circumstances present giving rise to a reasonable inference of discrimination (**App Vol. I, 236**). Plaintiff has provided testimony of differential treatment based on his sexual orientation in scheduling disparities (refusing to grant his request for his birthday in

favor of an alternate, non-openly identified LGBTQ+ employee, placing him under baseless harassment investigation upon the dubious complaints of other non-LGBTQ+ employees, and then refusing to document, or inform, the Plaintiff of the results of such investigation). Coupled with threats of termination, demotion, and actual termination, these are sufficient to establish a prima facie case of overall discrimination. Walmart's argument that the Plaintiff failed to establish a prima facie case because they did not provide evidence of a comparator is a narrow interpretation of the burden of proof in discrimination cases. It was undisputed that the baseless sexual harassment investigation occurred and direct comparators available of those not under unresolved investigations, despite the refusal of Walmart to document or conclude its internal investigation with any written records. Names and testimony are not strictly required to establish a prima facie case, as the Supreme Court has cautioned that the four *McDonnell-Douglas* elements are not, "an inflexible formulation." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977):

> We expressly noted that '[the] facts necessarily will vary in Title VII cases, and the specification... of the prima facie proof required from [a plaintiff] is not necessarily applicable in every respect to differing factual situations.' *Id.*, at 802 n. 13. The importance of *McDonnell Douglas* lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act.

*Id.*

Recognizing that proving a prima facie discrimination is a fact-intensive inquiry unique to each case, the Plaintiff does not necessarily need to provide the names of direct comparators to establish a prima facie case of discrimination. Nonetheless Plaintiff satisfied this, by citing to the names of those making the baseless sexual harassment claims, without documentation or resolution by Walmart (App. Vol I, 234; Dep. of HR Lead Timothy Rocha, 58-69 (**App Vol. II, 450-2**). Walmart's senior management provided the names of comparators, but also acknowledged that it failed to document, in writing, or resolve their baseless accusations, around the same time they inexplicably demoted the Plaintiff, while continuing the employment of the other falsely complaining employees, without interruption or reprimand. *Id.* Plaintiff does not bear the burden of production for providing direct comparators, while Walmart clearly does bear the burden of production for demonstrating legitimate reasons for disparate treatment, demotion, and termination, in the second step of *McDonnell Douglas*. Because Walmart failed in its burden or production, summary judgment, in its favor, was improper.

**VIII. Plaintiff Successfully Demonstrated a Hostile Work Environment**

Walmart's argument that the Plaintiff failed to establish a hostile work environment claim is flawed. The Plaintiff has provided evidence of numerous instances of harassment, which were severe and pervasive enough to alter the

conditions of his employment in the form of demotion, and termination, and create a hostile work environment. Walmart's argument that the Plaintiff failed to establish a hostile work environment claim because he did not report the harassment to the appropriate channels is a narrow interpretation of the employer's proactive duty to prevent and address harassment in the workplace. The fact that at least fourteen (14) management-level employees directly witnessed various forms of discrimination and harassment must be considered in the hostile workplace analysis. The fact that Plaintiff was directly threatened with termination, should he ask too many questions about the true causes of demotion (despite having no known performance, disciplinary, or unexcused attendance issues), is similarly inescapable (**App Vol. I, 236); (App Vol. II, 326**). These undisputed facts must be adopted, as true, by the District Court, before it can fairly apply the law.

Defendant argues the applicability of *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir.). Answer Brief, 24, 5. This case refers to the conditions under which derogatory comments can be attributed to an employer. The comments must be made by someone involved in the decision-making process affecting employment action. Plaintiff's testimony established that at least fourteen (14) management-level employees overheard or directly participated in various discriminatory actions or statements, including the first derogatory statement from Manager Aaron Jones, comparing LGBTQ+ status to pedophilia and bestiality. Even if manager Jones is

no longer available, as a witness, Plaintiff's testimony on the circumstances of his ultimate termination would be confirmed or opposed by managers Stark and Melendez, and therefore admissible at trial. Summary Judgment, taking credibility determinations away from the jury, is inappropriate. Likewise, manager Lopez is still available to confirm, or deny, her direct witnessing and erasure of the hostile graffiti, despite refusing to give Plaintiff a voluntary statement. HR Lead Rocha directly testified, in deposition format, to the presence of a baseless sexual harassment investigation, without documentation, or resolution. The hearsay analyses surrounding affidavits contemplated in *IBM* therefore do not apply. Walmart failed to counter Plaintiff's deposition testimony with any competent evidence demonstrating that the events did not, in fact, occur, as testified to, under oath, by Plaintiff (cross-examined in adversarial format). Sharpe-Miller's testimony is clearly admissible, and combined with other managers confirming or disconfirming testimony, appropriate for resolution at jury trial. Lastly, *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1141 (10th Cir. 2008), establishes that other racist, anonymous graffiti, should have been fully considered by the District Court in its hostile workplace analysis. Here, as in *Tademy*, a jury should be allowed to consider the "f-word" prominently applied to the forehead of an employee, and directly reported by Sharpe-Miller to manager Lopez. The District Court should also not have refused to consider the other homophobic slurs, whether or not they include

Sharpe-Miller's first name (he was repeatedly called "Jerry the Fairy" by anonymous employees, while he was mocked for having a catwalk by management-level employees Zamora and Morro) (**App Vol. II, 398, 419**). Even if the other slurs were delivered anonymously, this Court ruled in *Tademy* that they still must be considered by the District Court in its overall hostile workplace analysis.

## <u>CONCLUSION</u>

A fair review of the evidence, construed in the light most favorable to Appellant Sharpe-Miller, reveals that Plaintiff Jerry-Sharpe Miller successfully demonstrated a *prima facie* case of discrimination on the basis of sexual orientation, retaliation, and endurance of a hostile workplace. Walmart, Inc., failed in its burden of production, and was unable to convincingly demonstrate legitimate reasons for: 1) Sharpe-Miller's disparate treatment in scheduling and vacation requests, 2) Walmart, Inc.,'s decision to demote Sharpe-Miller, 3) Walmart, Inc.'s decision to place Sharpe-Miller under sexual harassment investigation, and continue such meritless investigation for a period of nearly two years, without written or verbal resolution; 4) Walmart, Inc.'s, decision to terminate the Plaintiff, for attending jury duty, on a day he was originally unscheduled to work and; 5) Walmart, Inc.'s causing Plaintiff to endure constructive discharge, the stress of retaliation, and a hostile workplace. The District Court's *Memorandum Opinion and Order Granting Motion for Summary Judgment* of December 23, 2023, and its *Final Judgment* dismissing

all claims with prejudice, should be Reversed (DNM Doc. 62, 63).  The *District Court's Order Denying Plaintiff's Motion to Alter or Amend Judgment* of March 7th, 2024 (Doc. 70), denying Sharpe-Miller reconsideration of dismissal of Counts II and III of the First Amended Complaint (NM Mexico Human Rights Act and Title VII claims), should be Reversed.  A fair and impartial jury trial on the merits should be additionally directed.

Respectfully submitted this 28th day of October, 2024.

*/s/ Derek Garcia*
New Mexico Legal Aid, Inc.
PO Box 25486
Albuquerque, NM 87125
505 768-6120
derekg@nmlegalaid.org

*Attorney for Plaintiff-Appellant Jerry Sharpe-Miller*

## STATEMENT OF COUNSEL AS TO ORAL ARGUMENT

Appellants respectfully request oral argument. They assume there may be questions

the Court has that are not answered in the briefing.

*/s/ Derek Garcia*
Derek Garcia, Esq.
New Mexico Legal Aid, Inc.
PO Box 25486
Albuquerque, NM 87125
505 768-6120
derekg@nmlegalaid.org

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

I certify that this brief complies with the type-volume, typeface and type-style requirements of Rule 32(a) of the Federal Rules of Appellate Procedure and 10th Circuit Rule 32. This brief contains **5172** words total, excluding the words exempted by Fed. R. App. P. 32(f), as calculated in Microsoft Word. It was prepared in 14-point font using Times New Roman, a proportionally spaced typeface.

*/s/ Derek Garcia*
Derek Garcia, Esq.
New Mexico Legal Aid, Inc.
PO Box 25486
Albuquerque, NM 87125
505 768-6120
derekg@nmlegalaid.org

# CERTIFICATE OF DIGITAL SUBMISSION

I certify that with respect to the foregoing:

(1)All required privacy redactions have been made per 10th Cir. R. 25.5

(2)If required to file additional hard copies, that the ECF submission is an exact copy of these documents

(3)The digital submissions have been scanned for viruses using the most recent version of a commercial virus scanning program, and according to that program are free of viruses.

*/s/ Derek Garcia*
Derek Garcia, Esq.
New Mexico Legal Aid, Inc.
PO Box 25486
Albuquerque, NM 87125
505 768-6120
derekg@nmlegalaid.org

## CERTIFICATE OF SERVICE

I certify that on October 28, 2024, I electronically transmitted the foregoing brief to the Clerk of Court, using the appellate CM/ECF System, causing it to be served on counsel of record for Appellees, who are registered CM/ECF users.

*/s/ Derek Garcia*
Derek Garcia, Esq.
New Mexico Legal Aid, Inc.
PO Box 25486
Albuquerque, NM 87125
505 768-6120
derekg@nmlegalaid.org